**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACKIE WILSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| Administrator of the Estate of Former Chicago | ) | Case No. 21-cv-03487 |
| Police Department Commander Jon Burge; Mayor | ) | |
| and former State's Attorney RICHARD M. | ) | |
| DALEY; former Chicago Police Department | ) | Judge Franklin U. Valderrama |
| detective THOMAS MCKENNA; Administrator | ) | |
| of the Estate of former Police Department | ) | |
| Detective PATRICK O'HARA; Administrator of | ) | |
| the Estate of former Chicago Police Department | ) | |
| Detective JOHN YUCAITIS; former Cook County | ) | |
| ASA LAWRENCE HYMAN; former Cook | ) | |
| County ASA NICHOLAS TRUTENKO; former | ) | |
| Cook County Court Reporter, MICHAEL | ) | |
| HARTNETT; Cook County Assistant State's | ) | |
| Attorney T. ANDREW HORVAT; former | ) | |
| Assistant State's Attorney and former Special City | ) | |
| of Chicago Corporation Counsel WILLIAM | ) | |
| KUNKLE; former jailhouse informant WILLIAM | ) | |
| DAVID COLEMAN, aka ALFRED CLARKSON; | ) | |
| Administrator of the Estate of former Chicago | ) | |
| Police Department Superintendent LEROY | ) | |
| MARTIN; former Chicago Police Department | ) | |
| Superintendent TERRY HILLARD; former OPS | ) | |
| Director GAYLE SHINES; former aide to the | ) | |
| Chicago Police Department Superintendent, | ) | |
| THOMAS NEEDHAM; CITY OF CHICAGO; | ) | |
| and COOK COUNTY, ILLINOIS; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT NICHOLAS TRUTENKO'S**
**MOTION TO DISMISS PURSUANT TO 12 (b)(6)**

Now comes the Defendant, NICHOLAS TRUTENKO, by and through his attorney, John

C. Coyne, and hereby respectfully moves this Honorable Court to dismiss Plaintiff's Complaint

1

pursuant to Rules 12 (b)(1) and Rule 12 (b)(6) of the Federal Rules of Civil Procedure. In support

thereof, Defendant state as follows:

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................ **4**

**STANDARD OF REVIEW** ................................................................................... **6**

**ARGUMENT** ........................................................................................................ **7**

   I.   PLAINTIFF'S SECTION 1983 CLAIMS (COUNTS I, III, & IV) AGAINST
DEFENDANT TRUTENKO ARE BARRED BY ABSOLUTE PROSECUTORIAL
IMMUNITY. ................................................................................................ 7

   II.   PLAINTIFF'S STATE LAW CLAIMS (COUNTS VI, VII, & VIII) ARE BARRED BY
ABSOLUTE PROSECUTORIAL IMMUNITY. ................................................. 11

   III.   ALL OF PLAINTIFF'S CLAIMS AGAINST DEFENDANT TRUTENKO ARE
TIME-BARRED. ............................................................................................ 12

   IV.   DEFENDANT TRUTENKO IS ENTITLED TO DISMISSAL OF PLAINTIFF'S 1983
CLAIMS (COUNTS I, III, & IV) TO THE EXTENT SAID CLAIMS ARE PREDICATED
ON ALLEGED CONDUCT WHICH DOES NOT SHOW DEFENDANT TRUTENKO WAS
ACTING UNDER COLOR OF LAW. ................................................................ 13

   V.   DEFENDANT TRUTENKO IS ENTITLED TO DISMISSAL OF PLAINTIFF'S 1983
CLAIMS (COUNTS I, III, & IV) BECAUSE THE FACTS AVERRED IN SUPPORT OF
THOSE CLAIMS ARE UNDULY VAGUE, LACKING ANY SPECIFICITY AS TO TIME,
AND SUBJECT TO DISMISSAL PURSUANT TO RULE 12(b)(6). ...................... 14

   VI.   DEFENDANT TRUTENKO IS ENTITLED TO DISMISSAL OF PLAINTIFF'S
MALICIOUS PROSECUTION CLAIM (COUNT VI) BECAUSE PLAINTIFF'S
COMPLAINT FAILS TO SUFFICIENTLY STATE A CLAIM FOR MALICIOUS
PROSECUTION UNDER ILLINOIS STATE LAW. ........................................... 17

   VII.   SOVEREIGN IMMUNITY BARS PLAINTIFF'S STATE LAW CLAIMS (COUNTS
VI, VII & VIII) TO THE EXTENT THEY ALLEGE CONDUCT OCCURRING WHEN HE
WAS A PROSECUTOR ACTING UNDER COLOR OF LAW. ............................. 19

   VIII.   PLAINTIFF'S SECTION 1983 CLAIMS (COUNTS I, III & IV) ARE BARRED BY
QUALIFIED IMMUNITY. ............................................................................. 20

   IX.   COUNT I FAILS TO STATE A CLAIM FOR WITHHOLDING EXCULPATORY
EVIDENCE AGAINST DEFENDANT TRUTENKO. ........................................ 22

   X.   COUNT I FAILS TO STATE A CLAIM FOR FAILING TO INTERVENE AGAINST
DEFENDANT TRUTENKO. ........................................................................... 23

**CONCLUSION** ...............................................................Error! Bookmark not defined.

**TABLE OF AUTHORITIES**

## CASES

*Allen v. Berger*, N .E .2d 367, 369 (2002 Ill. App)................................................................ 18

*Andrews v. Burge*, 660 F. Supp. 2d 868, 876 n. 6 (N.D. Ill. 2009)................................... 23

*Armstrong v. Daily*, 786 F.3d 529, 538 (7th Cir. 2015)...................................................... 20

*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). ................................................................. 20

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ......................................................................... 6

*Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)....................................... 16

*Barnes v. City of Centralia*, 943 F.3d 826, 831 (7th Cir. 2019) ....................................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007))........................................................ 6

*Bonds v. Fizer*, 713 F. Supp. 2d 752, 761 (N.D. Ill. 2010)................................................ 19

*Bradshaw v. DeGand*, 1992 U.S. Dist LEXIS 911, *4 (N.D. Ill. January 30, 1992) ....... 8

*Brady v. Maryland,* 373 U.S. 83, 91 (1963) ....................................................................... 22

*Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (2009) ............................. 13

*Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993) ............................................................. 8

*Burns v. Reed,* 500 US 478, 481(1991) ................................................................................ 9

*Carvajal v. Dominguez,* 542 F.3d 561, 567 (7th Cir.2008) ............................................... 23

*Elder v. Athens-Clark County*, 54 F.3d 694, 694 (11th Cir. 1995)................................... 10

*Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004) ..................................................... 12

*Fields v. Wharrie,* 672 F.3d 505 (7th Cir. 2012) ................................................................ 8

*French v. Corrigan*, 432 F.2d 1211, 1212 (7th Cir. 1970) ................................................ 10

*Gibson v. Chicago*, 910 F.2d 1510 (7th Cir. 1990)............................................................ 13

*Gordon v. Devine*, 2008 U.S. Dist. LEXIS 81234, *56 (N.D. Ill. October 14, 2008)................. 23

*Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007). ...................................................... 22

*Healy v. Vaupel*, 133 Ill. 2d 295, 549 N.E.2d 1240, 1247 (1990). ................................... 20

*Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010) ......................................................... 9

*Hobbs v. Cappelluti,* 2012 U.S. Dist. LEXIS 139895 *83- 84 (N.D. Ill. September 28, 2012)... 24

*Holland v. City of Chicago*, 643 F.3d 248, 256 (7th Cir. 2011). ....................................... 23

*Horstman v. County of DuPage*, 284 F.Supp.2d 1125, 1130-31 (N.D. Ill. 2003) ............. 19

*Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998).................................................. 18

*Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010)........................................................ 17

*Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005)...................................................... 22

*Ingemunson v. Hedges,* 133 Ill.2d 364, 369 (Ill. 1990) ..................................................... 19

*Jinkins v. Lee*, 209 Ill. 2d 320, 330 (2004). ...................................................................... 19

*Jones v. City of Chicago*, No. 15 C 1231 WL 6733677, at *3 (N.D. Ill Dec. 18, 2017). ............ 12

*LaPorta v. City of Chicago, 102 F. Supp. 3d 1014, 2015 U.S. Dist. LEXIS 53808, *10*............. 13

*Licari v. City of Chicago*, 298 F.3d 664, 667-68 (7th Cir. 2002*)* ................................... 12

*Manuel v. City of Joliet*, 903 F.3d 667, 670. (7th Cir. 2018)............................................. 12

*Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) ................................ 19

*McCauley v. City of Chicago*, 671 F.3d. 611, 616 (7th Cir. 2011)...................................... 7

*McGrath v. Gillis,* 44 F.3d 567, 571 (1995). .................................................................... 19

*Midwest Grinding Co. v. Spitz*, 716 F. Supp. 1087 (7th Cir. 1989)................................... 17

*Paulsen v. Abbott Laboratories*, 368 F. Supp. 3d 1152, 1171 (N.D. Ill. 2019).............................. 16
*Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001)................................................................. 20
*Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 319 (Ill. App. Ct. 2006) ............................................ 18
*Sherman v. Four Cty. Counseling Ctr.*, 987 F.2d 397, 401 (7th Cir. 1993) ................................. 20
*Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) ......................................................................... 7
*Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997)............................................................... 9
*Stump v. Sparkman*, 435 U.S. 349, 356 (1978)............................................................................... 8
*Swick v.Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). ................................................................. 17
*U.S. v. Gonzalez*, 319 F.3d 291, 297-98 (7th Cir. 2003)................................................................ 22
*U.S. v. Kimoto*, 588 F.3d 464, 492 (7th Cir. 2009)........................................................................ 22
*U.S. v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) ...................................................................... 22
*U.S. v. White*, 970 F.2d 328, 337 (7th Cir. 1992) .......................................................................... 23
*Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010)....................................................................... 13
*White v. City of Chicago*, 369 Ill. App. 3d 765, 861 N.E.2d 1083 (1st Dist. 2006) .................... 11
*Yaselli v. Goff*, 12 F.2d 396, 407 (2nd Cir. 1926)…………………………………………...10

**STATUTES**

705 ILCS 505/8(d) (2014) ............................................................................................................. 19
745 ILCS 10/8-101(a). ............................................................................................................ 12, 18
Fed. R. Civ. P. 12(b)(6)) .......................................................................................................... 10,23
Fed. R. Civ. Proc. 9 (f)............................................................................................................. 16,17
42 U.S.C.S. § 1983.......................................................................................................................... 15

## <u>INTRODUCTION</u>

Plaintiff's ten-count complaint alleges both 1983, and state law claims against seventeen defendants pertaining to Plaintiff's alleged wrongful conviction and incarceration. (Dckt. 1) The following counts are alleged against within-moving Defendant, Nicholas Trutenko ("Defendant Trutenko"): Count I - Due Process; Count III - Deprivation of Liberty without Probable Cause[1]; Count IV - Conspiracy to Deprive Constitutional Rights; Count VI - Malicious Prosecution (State Law); Count VII - Intentional Infliction of Emotional Distress (IIED)(State Law); and Count VIII - Conspiracy (State Law). *Id.* Plaintiff alleges his 1989 conviction, which was a

---

[1] As set forth within section V below, Count III of Plaintiff's Complaint fails to identity Defendant Trutenko or state what alleged conduct supports this Count against Defendant Trutenko

4

result of Defendant Trutenko's prosecution, was reversed in June of 2018 and Plaintiff was released from custody. *(*para. 311) To the extent these Counts properly allege tortious conduct which occurred while Defendant Trutenko was acting under color of law, they are subject to dismissal based upon, *inter alia,* absolute prosecutorial, or other, immunity. To the extent these Counts are *not* bottomed on conduct alleged to have occurred when Defendant Trutenko was acting in a prosecutorial, or some other legally relevant, capacity, and thus under *color of law*, they fail to properly allege 1983 liability and are subject to dismissal on that basis, among others set forth below.

Notably, Plaintiff alleges acts and omissions against Defendant Trutenko which, based upon the timeline alleged by Plaintiff himself, unquestionably occurred: 1) after Defendant Trutenko retired from his employment with the Cook County State's Attorney's Office; and/or 2) when Defendant Trutenko was clearly not acting in the course and scope of his employment as a prosecutor, investigator or any other role with respect to the continued prosecution or investigation of Plaintiff.

Plaintiff alleges generally that (Defendant Trutenko)…"engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity" *(*para. 50) Defendant Trutenko is alleged to have been an Assistant Cook County State's Attorney from 1981 to 1991 and from 2008 to 2020. *Id.* Defendant William David Coleman ("Defendant Coleman") is alleged by Plaintiff to have been "a jailhouse informant under the control of Defendant Trutenko and (Defendant) Kunkle from 1988 to the present." (para. 54)

The essential allegations against Defendant Trutenko are that he and Defendant Coleman "manufactured and fabricated a false story that implicated Plaintiff" in crimes. (para. 21) In doing so, Defendant Trutenko engaged in such misconduct as part of Defendants' conspiracy,

5

which began in 1982, to frame Plaintiff for crimes he did not commit." *Id.* Conspicuously absent from allegations pertaining to Plaintiff's 2020 prosecution and retrial ("2020 prosecution") is *any*, much less legally significant, allegation(s) that Defendant Trutenko played any role, prosecutorial, investigative, or otherwise, with respect to said prosecution. Indeed, Plaintiff makes clear that his 2020 prosecution was conducted exclusively by the Office of the Special Prosecutor ("OSP"), not by the Cook County State's Attorney's Office. (para. 27) Plaintiff further alleges that Defendant Trutenko "destroyed or otherwise suppressed evidence of his relationship with Defendant Coleman" after the charges against Plaintiff were dismissed (para. 223), without also alleging that Defendant Trutenko was acting in any prosecutorial, or investigative role with respect to Plaintiff at the time or otherwise was duty-bound to preserve "evidence" at the time.

Plaintiff makes no allegation, or inference, that the Cook County State's Attorney's Office, then Defendant Trutenko's employer, or Defendant Trutenko himself played any role in the investigation or prosecution of Plaintiff with respect to his 2020 prosecution. The alleged tortious conduct of Defendant Trutenko with respect to the 2020 prosecution of Plaintiff is restricted to conduct which occurred at a time when Defendant Trutenko was, for purposes of a section 1983 cause of action, a "private citizen". Under a plain reading of Plaintiff's Complaint, Defendant Trutenko was not acting in any capacity establishing *color of law* for purposes of alleging a *prima facie* case of section 1983 liability at any time after he left the Cook County State's Attorneys Office "in 1991." (para. 50)

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The first step in determining facial plausibility is to separate the well-pleaded facts in the complaint that are entitled to the presumption of truth from "legal conclusions and conclusory allegations merely reciting the elements of the claim [which] are not entitled to this presumption." *McCauley v. City of Chicago*, 671 F.3d. 611, 616 (7th Cir. 2011); *see also Iqbal*, 556 U.S. at 678-679. Thus, legal conclusions couched as factual allegations as well as "threadbare recitals of elements of a cause of action, supported by mere conclusory statements" are not entitled to the presumption of truth because neither are factual content and only serve to provide a framework for factual allegations. *Iqbal*, 556 U.S. at 678.

## **ARGUMENT**

I.   **PLAINTIFF'S SECTION 1983 CLAIMS (COUNTS I, III, & IV) AGAINST DEFENDANT TRUTENKO ARE BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY.**

The gravamen of Plaintiff's claims against Defendant Trutenko is the accusation that Defendant Trutenko "manufactured" and "fabricated" "false", and "inculpatory evidence" with respect to prosecution witnesses Coleman and DeWayne Hardin, and suppressed "exculpatory" and "impeaching evidence" from Plaintiff. (paras. 188, 189, 192)

It is well settled that prosecutors are absolutely immune from §1983 suits for damages relating to their initiation and presentation of the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). "[A]bsolute immunity shields prosecutors even if they act maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence. *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). The policy served is "concern that harassment by

unfounded litigation" could "cause a deflection of the prosecutor's energies from his public duties" and lead him to shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler,* 424 U.S. at 423. The *Imbler* Court held that whether or not an action falls within the scope of his prosecutorial duties is a question that pertains to its function. *Id.* The *Imbler* court recognized that "the duties of a prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution," and "decisions on a wide variety of sensitive issues" including "questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute . . ." *Id.* at 431 n.33. Furthermore, "[p]reparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." *Id.* The court further found in *Imbler* that an out-of-court "effort to control the presentation of [a] witness" testimony" is entitled to absolute immunity (Id. at 430 n.32) and that absolute prosecutorial immunity extends to prosecutors" knowing use of false testimony and deliberate suppression of exculpatory evidence. *Id*.

For purposes of absolute immunity, it is irrelevant whether the protected party acted negligently, with malice, or in bad faith. *Bradshaw v. DeGand*, 1992 U.S. Dist LEXIS 911, *4 (N.D. Ill. January 30, 1992) (Conlon, J.) (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (absolute immunity for the judiciary precludes civil actions, even when a judge acts in bad faith)). When considering an immunity defense, a court should focus on the conduct for which immunity is claimed, not the harm that the conduct may have caused or the question of whether or not it was lawful. *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993). Immunity is immunity from suit, not merely a defense to liability. See, e.g, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (discussing qualified immunity).

In *Fields v. Wharrie,* the Plaintiff, a previously convicted murderer subsequently granted a certificate of innocence, sued several prosecutors involved in his underlying criminal prosecution. 672 F.3d 505 (7th Cir. 2012). The *Fields* Court held that a prosecutor is absolutely immune from suit for all actions and decisions in furtherance of his prosecutorial duties and found further that absolute immunity extends beyond an individual prosecutor's decision to indict or try a case. *Fields,* 672 F.3d at 509. The *Fields* Court also cited the policy that this protection "endeavors to preserve the functioning of the public office." *Id.* at 510. *Also see Burns v. Reed,* 500 US 478, 481(1991)(asserting that "absolute immunity for a prosecutor's actions in a probable cause hearing is justified by the policy concerns articulated in *Imbler*.") The *Burns* Court also emphasized the *Imbler* Court's observation that "the duties of a prosecutor in his role as advocate for the State involves actions preliminary to the initiation of a prosecution." *Burns*, 500 US at 481. In the State of Illinois, the State's Attorney is "vested with the exclusive discretion in the initiation and management of criminal prosecution." *Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997).

The presence of probable cause for Plaintiff's arrest prior to his involvement is indicative of Defendant Trutenko's purely prosecutorial role in any prosecution of Plaintiff. *See Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010). As the *Hill* court found, "If (Plaintiff) confessed to the crimes before (Defendant Prosecutor Rogers) arrived, then the detectives likely did have probable cause to arrest him, which counsels toward a finding that Rogers was acting in a purely prosecutorial role for which he would be entitled to absolute immunity." *Hill,* 627 F.3d at 605.

In this case, it is clear that Plaintiff, through no alleged involvement of Defendant Trutenko whatsoever, confessed, albeit allegedly under duress, to the crimes alleged against him. *Id.* at para. 139. Since the only apparently relevant prosecutorial conduct alleged against

9

Defendant Trutenko occurred *after* the Appellate Court reversed Plaintiff's prior conviction in 1987, Defendant Trutenko "entered the prosecutorial picture" after all of the following had occurred: 1) Plaintiff had confessed to the crimes he was charged with; 2) there was indisputably a judicial finding of probable cause to detain (since Plaintiff was held in custody prior to his first trial and conviction) and 3) Plaintiff was convicted of the same criminal offense for which he was *later* prosecuted by Defendant Trutenko. Consequently, Defendant Trutenko was acting as an advocate, not as an investigator, for the people of Illinois with respect to the prosecution of Plaintiff.

Plaintiff's allegation that Defendant Trutenko was part of a conspiracy against him also does not defeat absolute immunity. *See French v. Corrigan*, 432 F.2d 1211, 1212 (7th Cir. 1970) (finding that prosecutors did not lose their immunity by reason of alleged conspiracy). In *Imbler,* plaintiff alleged a conspiracy among the prosecutor and police that caused him to be wrongfully charged and convicted through the knowing use of false testimony and the suppression of exculpatory evidence. 424 U.S. at 416. In affirming dismissal of plaintiff's complaint pursuant to Rule 12(b)(6), the Court found that, despite the nature of the plaintiff's "conspiracy" allegations, the prosecutor was absolutely immune because his activities were intimately associated with the judicial phase of the criminal process. *Id.* at 431. In *Yaselli v. Goff*, 12 F.2d 396, 407 (2nd Cir. 1926), summarily aff'd, 275 U.S. 503 (1927), which was cited by the *Imbler* court for the proposition that a prosecutor is immune from claims of eliciting false testimony (see *Imbler*, 424 U.S. at 422), the court held that immunity applies even though the defendant prosecutor allegedly "conspired to prosecute [the] plaintiff maliciously" and obtained a government appointment specifically "for the purposes of the prosecution." Consequently, any claim that Defendant Trutenko initiated the prosecution of Plaintiff as part of a conspiracy does not defeat

immunity. *See, e.g., Elder v. Athens-Clark County*, 54 F.3d 694, 694 (11th Cir. 1995) (prosecutor found to be immune from suit under §1983, where the prosecutor allegedly conspired to maliciously prosecute plaintiff for obstruction of justice in an effort to cover up plaintiff's complaints of beating by jailers).

Based on the foregoing, Plaintiff's Counts I, III, and IV against Defendant Trutenko should be dismissed with prejudice.

## II.    PLAINTIFF'S STATE LAW CLAIMS (COUNTS VI, VII, & VIII) ARE BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY.

As Plaintiff's state law claims against Defendant Trutenko are necessarily predicated upon the same factual allegations as Plaintiff's §1983 claims, Defendant Trutenko is entitled to absolute immunity from Plaintiff's state law claims as well.  Illinois courts have followed the United States Supreme Court's pronouncement in *Imbler* with respect to prosecutorial immunity. The Illinois Appellate Court reaffirmed application of absolute prosecutorial immunity, even in light of allegations of intentional misconduct by a prosecutor, in *White v. City of Chicago*, 369 Ill. App. 3d 765, 861 N.E.2d 1083 (1st Dist. 2006). In *White*, plaintiffs alleged that the State's Attorney's Office: (a) re-investigated the murder for which the plaintiffs were charged and determined they had no connection to the crime; (b) determined that another person had committed the murders; (c) determined that the main prosecution witness was untruthful; and (d) determined that the physical evidence did not support the charges. *White*, 369 Ill. App. 3d at 768. The plaintiffs in *White* further alleged that the State's Attorney's Office conducted a second investigation that supported the findings of the original investigation. *Id*.  Despite actual knowledge of these facts, alleged plaintiffs, the State's Attorney's Office (including the State's Attorney and one of his assistants) suppressed the information and induced a prosecution witness to testify falsely before the grand jury by paying him $4,000. *Id*.  While recognizing the severity

of the allegations against the State's Attorney's Office defendants, the *White* court found that they were protected from suit on the grounds of absolute prosecutorial immunity. *Id*. at 775-77.

Based upon the foregoing, Defendant Trutenko is entitled to absolute prosecutorial immunity as to Counts VI, VII, and VIII and said Counts should, therefore, be dismissed with prejudice.

### III.    ALL OF PLAINTIFF'S CLAIMS AGAINST DEFENDANT TRUTENKO ARE TIME-BARRED.

Plaintiff alleges that prosecution against him by Defendant Trutenko in 1989 was reversed in June of 2018 and he was released from custody.  (para. 311)  The statute of limitations for Plaintiff's 1983 claims against Defendant Trutenko is two years.  *Licari v. City of Chicago*, 298 F.3d 664, 667-68 (7th Cir. 2002*).see also Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004).  Based on the facts alleged in Plaintiff's Complaint, the statute of limitations for Plaintiff's 1983 claims against Defendant Trutenko accrued in June of 2018, the date he was released from custody, as that was when his detention ended.  *Manuel v. City of Joliet*, 903 F.3d 667, 670. (7th Cir. 2018) ("*Manuell II*").   Because Plaintiff did not file his complaint until June 30, 2021, more than two years later, his 1983 claims against Defendant Trutenko are time-barred.

Plaintiff's state law claim(s) against Defendant Trutenko, are also untimely pursuant to the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("The Act"). 745 ILCS 10/8-101(a).  Since Plaintiff alleges that his conviction obtained against him by Defendant Trutenko was reversed in June of 2018 and he was released from custody, any putative state law claim would have begun to run on the date the case is terminated in Plaintiff's favor, i.e. June of 2018. *Ferguson*, 213 Ill. 2d at 99; *See also Jones v. City of Chicago*, No. 15 C 1231 WL 6733677, at *3 (N.D. Ill Dec. 18, 2017).  Pursuant to The Act, a civil cause of action against a county official, i.e. Defendant Trutenko, would need to be filed within one year of the

claim accrual date.  745 ILCS 10/8-101(a).  As set forth above, the claim accrual date for any of Plaintiff's state law claims date would have been in June 2018 when his conviction was reversed and he was released from custody.  Plaintiff's Complaint was filed more than one year later, on June 30, 2021.  Consequently, Plaintiff's state law claims against Defendant Trutenko are time-barred.

Based on the foregoing, Plaintiff's Counts I, III, IV, VI, VII, and VIII are time-barred and should, therefore, be dismissed with prejudice.

## IV. DEFENDANT TRUTENKO IS ENTITLED TO DISMISSAL OF PLAINTIFF'S 1983 CLAIMS (COUNTS I, III, & IV) TO THE EXTENT SAID CLAIMS ARE PREDICATED ON ALLEGED CONDUCT WHICH DOES NOT SHOW DEFENDANT TRUTENKO WAS ACTING UNDER COLOR OF LAW.

In order to prevail on a section 1983 claim, Plaintiff must show that 1) he was deprived of a right secured by the Constitution, and 2) that the deprivation was caused by a person, in this case Defendant Trutenko, acting under color of state law.  *LaPorta v. City of Chicago, 102 F. Supp. 3d 1014, 2015 U.S. Dist. LEXIS 53808, *10. Also See Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827, 2009 U.S. App. LEXIS 13917, *6.  An action is not under *color of law* simply because it is performed by a public employee.  Rather, the action must be related in some way to the performance of the duties of the state office.  *Barnes v. City of Centralia*, 943 F.3d 826, 831 (7th Cir. 2019); *Gibson v. Chicago*, 910 F.2d 1510 (7th Cir. 1990) (holding police officer who shot decedent was not operating under *color of law* because he had been expressly ordered not to perform any police duties.); *See Also Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010) (finding alderman not acting under color of law when he beat repair shop employee).

The only alleged conduct of Defendant Trutenko which established that he acted under *color of law* sufficient to putatively sustain sec. 1983 claims apparently occurred between "1982 and 1991".  ("…Defendants (sic) Trutenko engaged in such misconduct as part of Defendants'

13

conspiracy, which began in 1982, to frame Plaintiff for crimes he did not commit".) (para. 21); (also see paras. 50, 188–197). During that time, Defendant Trutenko is alleged to have been involved with the 1989 re-prosecution and re-trial of Plaintiff, after his prior conviction had been reversed in 1987. (paras. 185, 188) Plaintiff alleges Defendant Trutenko left the Cook County State's Attorney's Office "in 1991" and did not return until 2008. (para. 50) However, Defendant Trutenko is not alleged to have played any *relevant* role, as a prosecutor, investigator or any other role which satisfies the *color of law* requirement*,* at any time after 1991. Consequently, Plaintiff's Complaint fails to establish the *color of law* requirement for any conduct alleged against Defendant Trutenko after 1991, at which point the 1989 re-trial of Plaintiff was completed and Defendant Trutenko had left the Cook County State's Attorney's Office. The allegation (para. 207) that Defendant Trutenko "….attempted to convince Coleman to testify on behalf of …at the 1992 Chicago Police Board hearing" clearly occurred after Defendant Trutenko had left the employment of the Cook County State's Attorneys and could not have been acting, in any capacity, under *color of law*. As a result, this Court should strike from consideration any tortious conduct alleged against Defendant Trutenko occurring after 1991 in determining whether Plaintiff has averred sufficient facts to defeat the within motion to dismiss. To the extent Plaintiff's Counts I, III and IV cannot stand alone without the support of any of these stricken allegations, they should be dismissed.

## V. DEFENDANT TRUTENKO IS ENTITLED TO DISMISSAL OF PLAINTIFF'S 1983 CLAIMS (COUNTS I, III, & IV) BECAUSE THE FACTS AVERRED IN SUPPORT OF THOSE CLAIMS ARE UNDULY VAGUE, LACKING ANY SPECIFICITY AS TO TIME, AND SUBJECT TO DISMISSAL PURSUANT TO RULE 12(b)(6).

Plaintiff alleges Defendant engaged in "misconduct as part of Defendants' conspiracy, which began in 1982, to frame Plaintiff for crimes he did not commit." (para. 21) Plaintiff's

Complaint is unduly vague as to even the general date(s) when Defendant Trutenko first acted

tortiously, in any capacity, with respect to Plaintiff.  Plaintiff's Complaint alleges no fewer, and

apparently many more, than twenty separate and distinct tortious acts committed by seventeen

different defendants over a period of thirty-nine years.  (paras. *inter alia,* 2, 7, 21, 26, 317)

Indeed, the tortious behavior alleged against the seventeen separate defendants is intermixed in

such a way that it makes it challenging, if at all possible, for Defendant Trutenko to discern the

precise conduct that either alleged against him alone, or against him in combination with other

defendants.  More problematic is the fact that here is no allegation(s) in Plaintiff's Complaint

which allows Defendant Trutenko to discern when, between the dates of 1982 and 1989, he first

engaged in the complained of behavior.  Since Plaintiff's does not appear to allege that

Defendant Trutenko played any role with respect to the prosecution of Plaintiff prior to his 1989

re-prosecution and re-trial, the allegation that "Defendants (sic) Trutenko engaged in *such*

misconduct as part of Defendants' (note the plural possessive, thus inclusive of all defendants)

conspiracy, *which began in 1982*, to frame Plaintiff for crimes he did not commit" is difficult to

make sense of.  (emphasis added).  This is especially so because Plaintiff alleges his earlier

conviction was not overturned by the Appellate Court until 1987, (para 185).  What potentially

relevant role could Defendant Trutenko possibly have played with respect to "Defendants'

conspiracy (against Plaintiff)….*which began in 1982*" if his first involvement as to Plaintiff's

"re-prosecution" occurred no earlier than 1987?   (emphasis added)  Defendant Trutenko's

inability to answer this question from a plain reading of Plaintiff's Complaint demonstrates that

the Complaint fails to meet the pleading requirements established by, *inter alia,* Iqbal*, Twombly,*

and FRCP 9(f) (stating that an allegation of time or place is material when testing the sufficiency

of a pleading).  Plaintiff's allegation that Defendant Trutenko tortiously urged Defendant

William Kunkle to present Coleman as a witness in a Section 1983 civil suit filed by Andrew Wilson also lacks any date reference, so it is impossible for Defendant Trutenko to know whether this alleged conduct occurred when he was a prosecutor, or a private citizen, much less whether he was acting under of *color of law* at the time. (paras. 197–200) Plaintiff's Complaint has confusingly intermixed allegations, without sufficient time references, against Defendant Trutenko which do not permit Defendant Trutenko to accurately assess whether he was a prosecutor acting under *color of law*, a prosecutor not acting under *color of law*, or a private citizen at critical moments in the alleged chronology. This failure likewise violates the pleading standard established by, *inter alia, Iqbal, Twombly,* and FRCP 9(f).

Count III, Deprivation of Liberty Without Probable Cause, of Plaintiff's Complaint fails to do any of the following: mention Defendant Trutenko; identify or define any specific conduct of Defendant Trutenko; reference any time period in which Defendant Trutenko is alleged to have engaged in any tortious conduct which supports the claim; identify Defendant Trutenko in the Wherefore clause of the count. Nonetheless, the reference to "Defendants" in paragraph 331 implicates, albeit vaguely, Defendant Trutenko. Because Count III fails to plead facts to sufficiently allege conduct against Defendant Trutenko, and to specify when that conduct was engaged in, Count III of Plaintiff's Complaint should be dismissed. By failing to plead this count in a manner that places Defendant Trutenko on notice of the conduct alleged against him, Plaintiff fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.

The Seventh Circuit requires that a plaintiff structure her complaint such that each individual defendant knows what it did that allegedly harmed the plaintiff. *See, e.g., Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) *Paulsen v. Abbott Laboratories*, 368 F. Supp.

16

3d 1152, 1171 (N.D. Ill. 2019) (concluding that plaintiff's allegations were insufficient to put the various defendants on notice to her claim but proceeding to examine each of the claims in turn); *See also Midwest Grinding Co. v. Spitz*, 716 F. Supp. 1087 (7th Cir. 1989) (finding Plaintiff failed to plead certain counts of mail and wire fraud against defendants with requisite particularity).

Count III should be dismissed against Defendant Trutenko because it is improperly pled.

By generally alleging tortious conduct over such an unduly broad period of time, i.e. seven years, Plaintiff prevents a *reasonable* inference that Defendant Trutenko is liable for the misconduct alleged" as required by *Iqbal.* (emphasis added)  Plaintiff's failure to allege with any meaningful detail the time in which Defendant Trutenko acted tortiously between 1982 and 1989 renders Plaintiff's complaint in violation of the pleading standard articulated in *Iqbal, Twombly,* and their progeny, in addition to Fed. R. Civ. Proc. 9 (f).   *See e.g. Ulmer v Avila*, 2016 U.S. Dist. Ct. LEXIS 89257 (where court granted Plaintiff "final" opportunity to replead his case and "take care to articulate: 1) which specific conduct underlies each cause of action; and 2) the date on which each cause of action accrued.)

Based on the foregoing, Plaintiff's Counts I, III and IV against Defendant Trutenko should be dismissed as insufficiently plead.

**VI.    DEFENDANT TRUTENKO IS ENTITLED TO DISMISSAL OF PLAINTIFF'S MALICIOUS PROSECUTION CLAIM (COUNT VI) BECAUSE PLAINTIFF'S COMPLAINT FAILS TO SUFFICIENTLY STATE A CLAIM FOR MALICIOUS PROSECUTION UNDER ILLINOIS STATE LAW.**

To state a claim for malicious prosecution under Illinois law, Plaintiff must allege the following: (1) the commencement or continuation of an original criminal or civil proceeding by defendants, (2) termination of the proceeding in favor of plaintiff, (3) the absence of probable cause for the proceeding, (4) the presence of malice on defendants' part, and (5) damages

17

resulting to plaintiff. See *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010); *Swick v.Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). Absence of any one of the five elements defeats the claim. *See Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 319 (Ill. App. Ct. 2006). In Illinois, malicious prosecution actions are disfavored." *Allen v. Berger*, N .E .2d 367, 369 (2002 Ill. App).

Count VI of Plaintiff's Complaint alleges state law malicious prosecution against fifteen separate defendants. (paras. 353 – 355) For reasons set forth above, Defendant Trutenko is only clearly alleged to have played a relevant role with respect to the 1989 re-prosecution and re-trial of Plaintiff. As set forth above, Defendant Trutenko is not properly alleged to have been acting in any relevant manner, including *under color of law,* or in the course and scope of his employment as a prosecutor, with respect to the 2020 re-prosecution and re-trial of Plaintiff. Based on Plaintiff's allegations, Defendant Trutenko was effectively acting as a private citizen giving testimony as a witness, and in no way, shape or form as a prosecutor of Plaintiff. For that reason alone, Defendant Trutenko is entitled to dismissal of Plaintiff's malicious prosecution claim against him because he did not prosecute Plaintiff in 2020. Furthermore, as set forth above, any potentially actionable claim for malicious prosecution for the 1989 re-prosecution of Plaintiff would have accrued the date his conviction was reversed by the Court of Appeals and he was released from custody, in June of 2018. Any such claim against Defendant Trutenko would have expired in June of 2019 pursuant to the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("The Act"). 745 ILCS 10/8-101(a).

In addition to the above, Plaintiff cannot establish the required element of an absence of probable cause. The Seventh Circuit has stated that "[i]f a case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is any reasonable basis to conclude that cause existed." *Humphrey v. Staszak*, 148

18

F.3d 719, 727 (7th Cir. 1998). *See also, Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th

Cir. 1993) ("If the underlying facts supporting the probable cause determination are not in

dispute, the court can decide whether probable cause exists."). *Bonds v. Fizer*, 713 F. Supp. 2d

752, 761 (N.D. Ill. 2010) ("[A] conclusion that probable cause exists as a matter of law is

appropriate only when no reasonable jury could find that the officer did not have probable

cause.").

Based upon the facts clearly known by Defendant Trutenko at the only times relevant to

this claim, probable cause to re-prosecute Plaintiff in 1989 was plainly evident. Based upon the

foregoing, Plaintiff fails to establish a prima facie case of malicious prosecution under Illinois

law against Defendant Trutenko as to any of his prosecutions and Count VI should be dismissed.

## VII. SOVEREIGN IMMUNITY BARS PLAINTIFF'S STATE LAW CLAIMS (COUNTS VI, VII & VIII) TO THE EXTENT THEY ALLEGE CONDUCT OCCURRING WHEN HE WAS A PROSECUTOR ACTING UNDER COLOR OF LAW.

In addition to the bases asserted above, Defendant Trutenko is immune from Plaintiff's

state law claims of malicious prosecution, IIED, and conspiracy because of the doctrine of

sovereign immunity. State's attorneys are independently elected state, not county, officials. *See*

*Horstman v. County of DuPage*, 284 F.Supp.2d 1125, 1130-31 (N.D. Ill. 2003), relying on

*Ingemunson v. Hedges,* 133 Ill.2d 364, 369 (Ill. 1990). Likewise, all assistant state's attorneys

are state officials. *McGrath v. Gillis,* 44 F.3d 567, 571 (1995). The Court of Claims has

exclusive jurisdiction over all claims against the State of Illinois for tort damages. 705 ILCS

505/8(d) (2014); *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001); *White*, 369 Ill. App. 3d

at 779 (holding that the Illinois Court of Claims had exclusive subject matter jurisdiction over

state law tort claims against the State's Attorney and an Assistant State's Attorney). Whether an

action is against the State hinges on the issues involved and the relief sought. *Jinkins v. Lee*, 209 Ill. 2d 320, 330 (2004).

The Seventh Circuit has recognized that: An agent's conduct will be attributed to the state for purposes of sovereign immunity if: "(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3)…the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) citing *Healy v. Vaupel*, 133 Ill. 2d 295, 549 N.E.2d 1240, 1247 (1990). In this case, Plaintiff's claims against Defendant Trutenko are, at least in part, related to actions that fall squarely within his past duties as a state actor. Certainly, the decision to charge or prosecute a case, as discussed previously, falls clearly (and exclusively) within the duty of the State's Attorney. Accordingly, Plaintiff's state law claims, to the extent they allege any conduct pertaining to Defendant Trutenko's actions as a prosecutor under *color of law,* are barred by sovereign immunity and Counts VI, VII and VIII should, therefore, be dismissed with prejudice for lack of subject matter jurisdiction

## VIII. PLAINTIFF'S SECTION 1983 CLAIMS (COUNTS I, III & IV) ARE BARRED BY QUALIFIED IMMUNITY.

Qualified immunity "gives government officials breathing room to make reasonable . . . judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The intent for qualified immunity is to protect "all but the plainly incompetent or those who knowingly violate the law," and will accommodate reasonable errors "because officials should not err always on the side of caution because they fear being sued." *Sherman v. Four Cty. Counseling Ctr.*, 987 F.2d 397, 401 (7th Cir. 1993). Importantly, the qualified immunity inquiry is an

objective one and does not focus on the motive of the defendants. *Armstrong v. Daily*, 786 F.3d 529, 538 (7th Cir. 2015).

The 7th Circuit has established a two-step analysis in qualified immunity cases. First, they determine whether the alleged conduct violated the plaintiff's constitutional rights, and then, if rights were violated, whether they were clearly established at the time the violation occurred. *Buckley*, 509 U.S. at 268. To evaluate the second analysis, the Courts apply the reasonable person standard. *Id*. In *Buckley*, the Court held that the prosecutors were entitled to qualified immunity. *Id*. at 261. The court held that coercing or otherwise soliciting a witness to falsely incriminate a suspect during a criminal investigation does not violate any established constitutional rights — except it is the rights of the witness who is coerced. *Id*. at 286-289.

Defendants Trutenko is alleged to have initiated prosecution of Plaintiff in the 1989 retrial. First, Plaintiff's allegations that Defendant Trutenko coerced or otherwise solicited a witness to falsely incriminate Plaintiff during a criminal investigation does not violate any established constitutional rights. Second, even if there was a violation, it was not clearly established. Defendant Coleman, alleged by Plaintiff to have been tortiously put before the jury by Defendant Trutenko, was subject to cross-examination and his credibility was presumptively assessed by the jury. Any reasonable prosecutor would not have known that the alleged conduct violated any constitutional rights of Plaintiff.

For the reasons set forth above, and to the extent that Defendant Trutenko is found not entitled to absolute immunity, Plaintiff's claims (Counts I, III & IV) against him should be dismissed pursuant to qualified immunity.

21

### IX.    COUNT I FAILS TO STATE A CLAIM FOR WITHHOLDING
### EXCULPATORY EVIDENCE AGAINST DEFENDANT TRUTENKO.

Count I asserts a claim for "Due Process" (para. 51) Plaintiff seeks to support this claims with no fewer than twenty separate tortious acts against seventeen defendants, including "…withholding from the prosecutors, judges and defense attorneys…the fact this this confession was false….." *(*para. 317) Insofar as this general, and equivocal allegation pertains to Defendant Trutenko (See section V above setting forth the manner in which Plaintiff's Complaint is inherently vague as to the alleged tortious conduct alleged against Defendant Trutenko), it appears to pertain to Defendant Trutenko presenting witness/Defendant Coleman to testify in Plaintiff's 1989 retrial. See para. 193. Plaintiff does not (and cannot) allege that he was unaware of the identity of Defendant Coleman at the time of trial nor of the fact that Defendant Coleman was believed by Plaintiff, before his trial, to be a "jailhouse informant under the control of Defendant Trutenko…" (para. 54) Under *Brady v. Maryland,* 373 U.S. 83, 91 (1963), a plaintiff has a viable due process claim when the prosecution or police fail to disclose exculpatory evidence to a criminal defendant before trial.

To establish a *Brady* violation, the plaintiff must show three elements: "(1) the evidence at issue is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence has been suppressed by the government; and (3) the suppressed evidence resulted in prejudice." *U.S. v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002). Evidence is suppressed "if (1) the prosecution failed to disclose the evidence before it was too late for the defendant to make use of the evidence, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007). First, a due process claim cannot be based upon the "suppression" of evidence that could have been located through use of reasonable diligence. *See Harris*, 486 F.3d at 1015. *U.S. v. Kimoto*, 588

22

F.3d 464, 492 (7th Cir. 2009)(materials that could have been located could not form basis for *Brady* violation); *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005)(no *Brady* claim based on suppression of law enforcement records that could have been located by defendant); *U.S. v. Gonzalez*, 319 F.3d 291, 297-98 (7th Cir. 2003)(failure to disclose existence of evidence that "could have...and should have" been located by defense attorney through exercise of reasonable diligence foreclosed Brady claim); *U.S. v. White*, 970 F.2d 328, 337 (7th Cir. 1992)("Regardless of whether the evidence was material or even exculpatory, when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim."). In this regard, a defendant in a criminal case that goes to trial has the "responsibility to probe the witnesses and investigate their versions of the relevant events" and failure to discover the information held by such persons by failing to do this does not amount to a *Brady* violation. *Carvajal v. Dominguez,* 542 F.3d 561, 567 (7th Cir.2008); *Holland v. City of Chicago*, 643 F.3d 248, 256 (7th Cir. 2011).

The involvement, nature, and circumstances behind Defendant Coleman's status as a witness against Plaintiff were all fully disclosed and available to Plaintiff prior to his trial. There is insufficient evidence that this evidence was suppressed or not disclosed by the prosecution to Plaintiff in time to make use of the evidence. Consequently, Plaintiff fails to state a claim under Count I for withholding of exculpatory evidence and that count should be dismissed accordingly.

## X. COUNT I FAILS TO STATE A CLAIM FOR FAILING TO INTERVENE AGAINST DEFENDANT TRUTENKO.

No cognizable constitutional claim exists against prosecutors, and herein Defendant Trutenko, for failure to intervene in the conduct of third parties. *See Gordon v. Devine*, 2008 U.S. Dist. LEXIS 81234, *56 (N.D. Ill. October 14, 2008) (Aspen, J.) (declining to expand the

23

law to recognize a "failure to intervene" claim against an assistant state's attorney and dismissing claim pursuant to Fed. R. Civ. P. 12(b)(6)); *Andrews v. Burge*, 660 F. Supp. 2d 868, 876 n. 6 (N.D. Ill. 2009) (following *Gordon* and dismissing failure to intervene claim against the State's Attorney pursuant to Fed. R. Civ. P. 12(b)(6)): *Hobbs v. Cappelluti,* 2012 U.S. Dist. LEXIS 139895 *83- 84 (N.D. Ill. September 28, 2012) (Lefkow, J.) (following *Gordon* and *Andrews* and dismissing a claim for failure to intervene against defendant prosecutors).

Count I of Plaintiff's Complaint alleges that Defendant Trutenko failed to "intervene to stop said violations" and thus makes a claim for failure to intervene against Defendant Trutenko. (para. 319)  Because no such viable claim exists, Count I against Defendant should be dismissed to the extent that it alleges a failure to intervene against Defendant Trutenko.

## CONCLUSION

Wherefore, for all of the foregoing reasons, Defendant Nicholas Trutenko, by and through undersigned counsel, hereby moves this Honorable Court to dismiss the entirety of Plaintiff's Complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) and decline to exercise supplemental jurisdiction over any remaining counts.

**NICHOLAS TRUTENKO**

By:    */s/ John C. Coyne*
       John C. Coyne

**Law Offices of John C. Coyne**
53 West Jackson Blvd.
Suite 1750
Chicago, IL  60604
(312) 929-4308
jcc@johnccoynelaw.com

## <u>Certificate of Service</u>

I, Patricia Andersen, certify that I filed and served this document on all counsel and parties of record via the EC/CMF court filing system this 23rd day of August 2021.

*/s/ Patricia Andersen*