**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Jackie Wilson**,**

        Plaintiff,

        v.

Administrator of the Estate of Former Chicago
Police Department Commander Jon Burge, et.
al.,

        Defendants.

No.:   21-cv-03487

Judge Franklin U. Valderrama
Courtroom:     1219

Magistrate Judge Jeffrey T. Gilbert
Courtroom:     1386

---

## DEFENDANT HARTNETT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

Terry A. Ekl
Tracy L. Stanker
Ekl, Williams & Provenzale LLC
901 Warrenville Road, Suite 175
Lisle, IL 60190
(630) 654-0045
tekl@eklwilliams.com
tstanker@eklwilliams.com

## TABLES

TABLE OF CONTENTS................................................................................................i
TABLE OF AUTHORITIES ........................................................................................iii

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................1

**ARGUMENT**................................................................................................2

    **I.**    APPLICABLE PLEADING STANDARDS................................................2

    **II.**    FACTUAL ALLEGATIONS AGAINST HARTNETT................................3

    **III.**    COUNTS I THROUGH IV MUST BE DISMISSED BECAUSE THE CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS................................5

    **IV.**    COUNTS I THROUGH IV MUST BE DISMISSED BECAUSE HARTNETT WAS NOT ACTING "UNDER COLOR OF LAW."................................8

    **V.**    COUNTS I THROUGH IV MUST BE DISMISSED FOR FAILURE TO PLEAD A CAUSE OF ACTION UNDER §1983................................9

        **A.**    **Plaintiff Fails to State a Claim Against Hartnett for A Due Process Violation or Fourth Amendment Violation**................................10

        **B.**    **Plaintiff Fails to State a Claim Against Hartnett For Coercive Interrogation**................................11

        **C.**    **Plaintiff Fails to State a Claim Against Hartnett for Conspiracy**................................12

        **D.**    **Hartnett Cannot Be Held Liable For Any §1983 Claim On A Failure to Intervene Theory**................................13

    **VI.**    HARTNETT IS ENTITLED TO QUALIFIED IMMUNITY ON COUNTS I THROUGH IV................................14

    **VII.**    COUNTS VI THROUGH VIII MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER ILLINOIS LAW.

        **A.**    **Plaintiff Fails to State a Cause of Action for Malicious Prosecution**...16

i

**B.** **Plaintiff Fails to State a Cause of Action for Intentional Infliction of Emotional Distress and the Claim is Time Barred**..........................17

**C.** **Plaintiff Fails to State a Cause of Action for Conspiracy Under State Law**........................................................................18

**CONCLUSION**.............................................................................................19

ii

## TABLE OF AUTHORITIES

*Amundsen v. Chicago Park Dist.,*
   218 F.3d 712 (7th Cir.2000) ...................................................................................... 12

*Andrews v. Burge,*
   660 F. Supp.2d 868 (N.D. Ill. 2009) ........................................................................ 13

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................... 3, 15

*Beaman v. Freemeyer,*
   2019 IL 122654 (2019) ............................................................................................ 16

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................ 2-3

*Bridewell v. Eberle,*
   730 F.3d 672 (7th Cir. 2013) ..................................................................................... 18

*Briscoe v. LaHue,*
   460 U.S. 325 (1983) ................................................................................................. 11

*Brokaw v. Mercer County,*
   235 F. 3d 1000 (7th Cir. 2001) ................................................................................. 12

*Cada v. Baxter Healthcare Corp.,*
   920 F.2d 446 (7th Cir. 1990) ...................................................................................... 5

*Cairel v. Alderen,*
   821 F.3d 823 (7th Cir. 2016) ..................................................................................... 17

*Carvajal v. Dominguez,*
   542 F.3d 561 (7th Cir. 2008) ..................................................................................... 11

*Cooney v. Rossiter,*
   583 F.3d 967 (7th Cir. 2009) ................................................................................. 12-13

*Evans v. City of Chicago,*
   434 F.3d 916 (7th Cir. 2006) ................................................................................ 17-18

*Evers v. Reak,*
   21 Fed. Appx 447 (7th Cir. 2001) ............................................................................. 12

*Feltmeier v. Feltmeier*,
   207 Ill. 2d 263 (2003)............................................................................................17

*Gibson v. City of Chicago*,
   910 F.2d 1510 (7th Cir. 1990).................................................................................2

*Gordon v. Devine*,
   No. 08 C 377, 2008 WL 4594354 (N.D. Ill. Oct. 14, 2008)................................13

*Green v. Newport*,
   868 F.3d 629 (7th Cir. 2017)................................................................................15

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)..............................................................................................14

*Heck v. Humphrey*,
   512 U.S. 477 (1994)............................................................................................6-7

*Hileman v. Maze*,
   367 F.3d 694 (7th Cir. 2004)..................................................................................5

*Hobbs v. Cappelluti*,
   899 F. Supp.2d 738 (N.D. Ill. 2012)..................................................................5,13

*Hurst v. Capital Cities Media, Inc.*,
   323 Ill. App. 3d 812 (5th Dist. 2001)...................................................................18

*Johnson v. Winsted*,
   900 F.3d 428 (7th Cir. 2018)...............................................................................7-8

*Logan v. Caterpillar, Inc.*,
   246 F.3d 912 (7th Cir. 2001)................................................................................16

*Logan v. Wilkins*,
   644 F.3d 577 (7th Cir. 2011)..................................................................................5

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982)................................................................................................9

*McDonough v. Smith*,
   139 S. Ct. 2149 (2019)............................................................................................7

*Mullenix v. Luna,*
    136 S. Ct. 305 (2015)........................................................................................15

*Neita v. City of Chicago,*
    830 F.3d 494 (7th Cir. 2016)............................................................................5

*Palmer v. Marion City,*
    327 F.3d 588 (7th Cir. 2003)..........................................................................10

*Polk County v. Dodson,*
    454 U.S. 312 (1981)..........................................................................................9

*Rehberg v. Paulk,*
    566 U.S. 356 (2012)........................................................................................11

*Saucier v. Katz,*
    533 U.S. 194 (2001)........................................................................................14

*Scherer v. Balkema,*
    840 F.2d 437(7th Cir. 1988)...........................................................................12

*Serrano v. Guevara,*
    315 F. Supp.3d 1026 (N.D. Ill. 2018).......................................................15-16

*Smith v. City of Chicago,*
    3 F.4th 332 (7th Cir. 2021)............................................................................6-7

*Smith v. Gomez,*
    550 F.3d 613(7th Cir. 2008)..........................................................................12

*Swick v. Liautaud,*
    169 Ill. 2d 504 (1996)....................................................................................16

*United States v. Classic,*
    313 U.S. 299 (1941)......................................................................................8-9

*Wallace v. Kato,*
    549 U.S. 384 (2007)..........................................................................................5

*Wallace v. City of Chicago,*
    440 F.3d 421 (7th Cir. 2006)..........................................................................11

*West v. Atkins,*
    487 U.S. 42 (1988)...................................................................................8-9

*Wheeler v. Lawson,*
    539 F.3d 629 (7th Cir. 2008)............................................................15

*Wolf-Lillie v. Sonquist,*
    699 F.2d 864 (7th Cir. 1983)............................................................10

*Yang v. Hardin,*
    37 F.3d 282 (7th Cir. 1994)...............................................................14

vi

NOW COMES Defendant, Michael Hartnett, by and through his attorneys, Ekl, Williams & Provenzale, LLC and for his Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) states as follows:

## INTRODUCTION

Plaintiff alleges that he was wrongfully convicted of the murders of two Chicago Police Officers in 1983 and again after a retrial in 1989. According to Plaintiff, his convictions were based, in part, on his own false confession which was the result of being tortured by Chicago police officers. Based on a variety of different theories, Plaintiff has alleged numerous constitutional and state law claims against seventeen (17) defendants spanning a 39 year period of time. However, despite Plaintiff's vague and general conclusions, lumping numerous defendants together as collectively violating his constitutional rights, the actual factual allegations against Michael Hartnett ("Hartnett") are relatively straightforward and fail to demonstrate any personal involvement by Hartnett in any constitutional or state law injury suffered by Plaintiff. In 1982, Hartnett was a Cook County court reporter. As such, he transcribed Plaintiff's confession. It is not alleged that Hartnett tortured or abused Plaintiff. It is not alleged that Hartnett witnessed the torture or abuse of Plaintiff. Plaintiff does not allege that Hartnett mistyped any portion of his confession or that any portion of the transcript prepared by Hartnett was transcribed incorrectly. Hartnett is not alleged to have done anything other than record what was said by Plaintiff, which is the lawful and limited role of a court reporter in any courtroom, deposition, or interview setting.

Despite that, Plaintiff alleges that Hartnett caused his wrongful charging, prosecution, and conviction and has alleged seven causes of action against Hartnett for: Violation of Due Process (Count I); Coercive Interrogation (Count II); Deprivation of Liberty without Probable Cause (Count

III); Conspiracy to Deprive Constitutional Rights (Count IV), Illinois State Law Malicious Prosecution (Count VI); Illinois State Law Intentional Infliction of Emotional Distress (Count VII); Illinois State Law Conspiracy (Count VIII). Plaintiff fails to plead any specific facts that Hartnett personally participated in any conduct that is the basis of any constitutional claim or state law claim. Likewise, Plaintiff's theory that Hartnett is responsible for the conduct of Chicago police officers based on a "failure to intervene" is not only legally and factually deficient but does not even meet a plausibility threshold. Moreover, based on Hartnett's position as a court reporter, he was clearly not operating "under color of law" and therefore, the Plaintiff cannot sustain a cause of action against him pursuant to §1983. Even assuming *arguendo* this Court determines that Hartnett was acting "under color of law" when he transcribed Plaintiff's confession, Hartnett would be entitled to qualified immunity for his act of transcribing Plaintiff's confession and absolute immunity for any of his court testimony. Lastly, the counts pled against Hartnett are all barred by the statute of limitations given that in June 2018, Plaintiff's conviction was vacated, his confession was ruled inadmissible, and he was released from custody, yet it was not until three years later that Plaintiff filed his lawsuit.

## **ARGUMENT**

### I. **APPLICABLE PLEADING STANDARDS**

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) tests the sufficiency of the complaint. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In order to withstand a motion to dismiss, the complaint must contain sufficient factual allegations to demonstrate a plausible entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560, 127 S. Ct. 1955 (2007). This "requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action." *Id*. at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual assertion." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).  According to *Iqbal*, once the pleader's conclusions are disregarded, a court should determine if the "well-pleaded factual allegations....plausibly give rise to an entitlement of relief." *Id.* at 679.

## II.     FACTUAL ALLEGATIONS AGAINST HARTNETT

Within the 375 paragraphs of allegations pled by Plaintiff, relatively few are related to Hartnett's conduct and/or have any relevance to whether Hartnett violated Plaintiff's constitutional rights or engaged in wrongdoing under state law.  The following are the factual allegations made against Hartnett or relevant to the claims against Hartnett[1]:

In 1982, Hartnett was a court reporter and, according to Plaintiff, he served as a contractor and agent of Cook County and the State's Attorney's Office.  Dkt. 1, ¶52.  On February 14, 1982, the Plaintiff and his brother, Andrew Wilson, were both arrested for the murders of two Chicago police officers, Officer William Fahey and Officer Richard O'Brien, and taken to Chicago Police Department Area 2 headquarters ("Area 2").  Id., ¶88.  At Area 2, Plaintiff and his brother were both tortured by various Chicago police officers.  Id., ¶¶92-105.  After Andrew Wilson was tortured by Chicago police officers, he agreed to give a statement.  Id., ¶105.  Andrew Wilson's statement was given to Assistant State's Attorney Lawrence Hyman in the presence of Hartnett.  Id.  After Andrew Wilson gave his statement, Hartnett took a picture of Andrew Wilson after which time Andrew Wilson told Hartnett that he was going to be tortured more and in response, Hartnett said he could

---

[1]Hartnett denies the allegations set forth in the Complaint and they are accepted as true only for purposes of this Motion.

not do anything about it.  Id., ¶106.

Plaintiff alleges that he was also tortured by former Chicago Police Detectives Thomas McKenna and Patrick O'Hara and former Chicago Police Commander Jon Burge.  Id., ¶¶113-144. After Plaintiff was tortured, ASA Hyman and Hartnett were called in the room and Plaintiff gave a statement.  Id., ¶¶148-150.  Plaintiff claims that Hartnett was present at Area 2 when he and his brother were tortured by Chicago police officers.  Id., ¶145.  According to Plaintiff, while he was being tortured, Hartnett was reading the Sunday newspaper and waiting to be called into the interrogation room.  Id., ¶146.  While Plaintiff concludes that Hartnett had knowledge that Plaintiff was tortured, Plaintiff does not allege any actual facts to support that conclusion.  Id., ¶151.  Plaintiff also claims that Hartnett knew that the Cook County State's Attorney had a policy to inquire about coercion and Hartnett failed to "intervene" to inform ASA Hyman that he should ask Plaintiff and his brother if they had been physically abused or otherwise mistreated.  Id., ¶151.

In November of 1982, at a hearing to suppress Plaintiff and Andrew Wilson's statements, Hartnett, after being coached by former ASA William Kunkle, presented "false denials at the hearing."  Id., ¶169.  Both Plaintiff and his brother's tortured confessions were introduced at their 1983 trial and they were both convicted.  Id., ¶ 183.  Plaintiff's conviction was reversed by the Illinois Appellate Court in 1987 and the case was remanded for a new trial.  Id., ¶20.  At Plaintiff's second trial in 1989, Plaintiff's tortured confession was introduced and Plaintiff was convicted again. Id., ¶¶23, 195.  In June of 2018, Cook County Criminal Court Judge William Hooks ruled that Plaintiff's confession was tortured from him, granted Plaintiff a new trial, and suppressed Plaintiff's confession. Id., ¶¶26, 211.   Plaintiff was also released from custody on bond. Id., ¶311.

Plaintiff's third trial was prosecuted by the Office of the Special Prosecutor ("OSP") and

began in September of 2020. Id., ¶¶27, 213. On October 1, 2020, the OSP moved to dismiss all charges against Plaintiff with prejudice and Judge Hooks granted the motion. Id., ¶222.

## III.   COUNTS I THROUGH IV MUST BE DISMISSED BECAUSE THE CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Claims brought under §1983 are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred. *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). In Illinois, that period is two years. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 1095 (2007). Although state law governs the statute of limitations, federal law governs when a claim accrues under §1983. *Wallace*, 549 U.S. at 388. Accrual marks the date on which the statute of limitations begins to run. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). While a complaint does not need to anticipate or overcome affirmative defenses, "when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011).

A §1983 claim accrues "when the plaintiff knows or should know that his or her rights have been violated." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). The court applies a two-part test to determine the accrual date of a §1983 claim. *Id.* "First, a court must identify the [constitutional] injury...[and second], it must determine the date on which the plaintiff could have sued for that injury." *Hobbs v. Cappelluti,* 899 F. Supp.2d 738, 755 (N.D. Ill. 2012) (quoting *Hileman,* 367 F.3d at 696). It is "the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (internal quotation marks and citation omitted).

The §1983 claims brought against Hartnett are based exclusively on his alleged role in

obtaining Plaintiff's confession and the subsequent use of that confession to detain and convict Plaintiff. Plaintiff's confession was transcribed by Hartnett in 1982. Dkt. 1, ¶¶88, 148-150. Based in part on the introduction of that confession at trial, Plaintiff was convicted of murder in 1983 and again in 1989. Id., ¶¶19, 23. Plaintiff's second conviction was vacated in June of 2018. Id., ¶¶26, 211. At that same time, Plaintiff's confession was suppressed. Id. While the OSP continued to pursue its prosecution of Plaintiff after his conviction was vacated in June of 2018, that prosecution was not based on Plaintiff's confession given that the trial court had already ruled the confession to be inadmissible. Id., ¶¶27, 213. Furthermore, after Plaintiff's conviction was vacated, he was released on bond in June of 2018. Id., ¶311. Therefore, any cause of action brought under §1983 based on obtaining or using Plaintiff's confession accrued no later than June of 2018, more than two years before Plaintiff filed his lawsuit on June 30, 2021.

Moreover, there is absolutely no legal basis for Plaintiff to claim that the accrual of his alleged civil rights claim was tolled after June of 2018. Although the accrual of civil rights claim is tolled if the civil action would invalidate the plaintiff's conviction, once a conviction is reversed, the action may proceed See *Heck v. Humphrey*, 512 U.S. 477, 486-87, 115 S. Ct. 2364 (1994). Plaintiff's conviction was vacated and his confession was suppressed in June of 2018. Dkt. 1, ¶¶26, 211. Therefore, after that date, he was not subjected to any further detention or prosecution resulting from his alleged tortured confession.

Additionally, specifically as to Plaintiff's Fourth Amendment claim (Count II), in *Smith v. City of Chicago,* 3 F.4th 332 (7th Cir. 2021), the Seventh Circuit conclusively held that a Fourth Amendment claim for unlawful pretrial detention accrues, and the statute of limitations for filing a §1983 action commences, when the plaintiff is released from custody. According to *Smith*, the

accrual of a Fourth Amendment claim for unlawful pretrial detention occurs upon the plaintiff's release from detention and not upon the favorable termination of the charges against the plaintiff. *Id.* at 339. As the court recognized, relying upon *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019), *Heck* does not apply where a conviction is "merely anticipated." *Smith,* 3 F.4th at 338. Likewise, when Plaintiff was released from custody in June of 2018 and placed on bond, he was no longer being detained under the Fourth Amendment and therefore, any Fourth Amendment claim accrued on that date regardless of the fact that his prosecution continued until the charges were dismissed in October of 2020.

*Heck* also did not toll the statute of limitations for Plaintiff's Fourteenth Amendment Due Process claim or Fifth Amendment Coercive Interrogation claim after June of 2018. In *Heck*, the Supreme Court held that a §1983 claim that if proven would "necessarily imply the invalidity" of the plaintiff's criminal conviction, cannot proceed unless and until the plaintiff "can demonstrate that the conviction...has already been invalidated" by some official means, including direct appeal or collateral review. 512 U.S. at 487. Plaintiff's conviction was vacated in June of 2018. Dkt. 1, ¶¶26, 211. Plaintiff's confession was suppressed and ruled inadmissible in June of 2018. Dkt 1, ¶¶26, 211. Therefore, any cause of action based on obtaining and using Plaintiff's confession could have been brought as of June of 2018. There was no restriction under *Heck* against Plaintiff bringing his §1983 claims based on his alleged tortured confession after June of 2018 and therefore, there was no tolling of the statute of limitations. In *Johnson v. Winsted*, 900 F.3d 428, 439 (7th Cir. 2018), the Seventh Circuit held that the plaintiff could only purse his Fifth Amendment claims based on the use of his statements at his second trial because his conviction after his first trial had been reversed more than two years prior to the plaintiff bringing his suit. According to *Johnson,* the two-year time clock

on the plaintiff's Fifth Amendment claim began to run when the plaintiff's conviction was reversed, even though the plaintiff was tried for a second time. *Id.*

After June of 2018, any claim based on obtaining and using Plaintiff's tortured confession could not possibly imply the invalidity of Plaintiff's criminal conviction given that Plaintiff's conviction had already been vacated and his confession suppressed. The fact that the OSP continued to prosecute Plaintiff until dismissing the charges in October of 2020 is of no consequence to the claims brought against Hartnett. Between June of 2018 and October 2020, Plaintiff did not have an existing conviction and he was not being detained. Plaintiff's continued prosecution by the OSP was not based on his confession, but rather on completely independent evidence, for which Hartnett played absolutely no role in obtaining. Therefore, all four claims brought under §1983 are barred by the statute of limitations.

## IV. COUNTS I THROUGH IV MUST BE DISMISSED BECAUSE HARTNETT WAS NOT ACTING "UNDER COLOR OF LAW."

In 1982, at the time Hartnett transcribed Plaintiff's confession, he was a court reporter. Dkt. 1, ¶52. According to Plaintiff, he was a "contractor and agent of Cook County and its State's Attorneys' Office." Id. However, Plaintiff has not alleged any facts to suggest that Hartnett was acting "under color of law" when he performed his duties as a court reporter.

To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The traditional definition of acting under color of state law requires that the defendant in a §1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49 (quoting *United States v. Classic*, 313

U.S. 299, 326 (1941)).

A defendant's conduct is "under color of state law" if it satisfies the state-action requirement of the Fourteenth Amendment. *West*, 487 U.S. at 49 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982)). To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State...or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly said to be a state actor." Id (quoting *Lugar*, 457 U.S. at 936, n. 18). Hartnett was a court reporter. Dkt. 1, ¶52. Hartnett was not an investigator, a prosecutor, or a police officer. When Hartnett transcribed the words spoken by the Plaintiff in 1982, he was not exercising any right or privilege created by the State.

Moreover, while generally state employment is sufficient to render an individual a state actor, in *Polk County v. Dodson*, 454 U.S. 312, 321-322 (1981), the Court held that public defenders do not act under color of state law, even though they are employed by the State, because public defenders retain "professional independence", which the State is constitutionally obligated to respect. Likewise, court reporters, even if they are paid by the State or Cook County, always maintain their independence. Court reporters do not take direction as to what they transcribe or record, and it is not alleged that Hartnett did so. Court reporters transcribe and record what is said, even if such recording is in opposition to the State's position. A court reporter does not act "on behalf of the State" and therefore, cannot reasonably be found to be a state actor or acting under color of law. See *West*, 487 U.S. at 50 (citing *Polk County*, 454 U.S. at 323 n.13).

## V. COUNTS I THROUGH IV MUST BE DISMISSED FOR FAILURE TO PLEAD A CAUSE OF ACTION UNDER §1983.

Not only are all of Plaintiff's §1983 causes of action barred by the statute of limitations and the failure to demonstrate that Hartnett was acting under the color of law, Plaintiff also fails to plead

a factually sufficient claim against Hartnett for violating Plaintiff's Fourth, Fifth, or Fourteenth Amendment rights, let alone his participation in a conspiracy to do so.

In order for a government official to be held liable for a constitutional violation, he must have had the requisite personal involvement in the alleged deprivation. *Palmer v. Marion City,* 327 F.3d 588, 594 (7th Cir. 2003). "An individual cannot be held liable in a §1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Absent personal involvement, any claims against that individual must be dismissed. *Id.*

Plaintiff does not allege that Hartnett tortured or abused him. Plaintiff does not allege that Hartnett was present when he was tortured by Chicago police officers. To the contrary, Plaintiff alleges that Hartnett was present at Area Two, reading a newspaper, when he was being tortured. Dkt. 1, ¶¶145-146. Plaintiff alleges that it was only after he was tortured by Chicago police officers and agreed to give a statement that Hartnett was brought into the room. Id., ¶148. Plaintiff does not allege that Hartnett engaged in any conduct whatsoever, other than to transcribe his statement. Even taking Plaintiff's conclusion that Hartnett had knowledge that Plaintiff was tortured as true, Hartnett's knowledge of the torture does not equate to participation in the torture.

### A.    Plaintiff Fails to State a Claim Against Hartnett For A Due Process Violation or Fourth Amendment Violation.

In Count I, Plaintiff alleges that Hartnett "caused the wrongful charging, prosecution, convictions, and imprisonment of Plaintiff." Dkt. 1, ¶315. In Count III, Plaintiff alleges that "the Defendants" used false evidence that they manufactured to accuse Plaintiff of criminal activity and cause the institution or continuation of criminal proceedings against Plaintiff without probable cause. Id., ¶331.

However, in contradiction to the above conclusory allegations, the actual facts pled

conclusively establish that Hartnett did not personally participate in any conduct that caused Plaintiff to be wrongfully charged, prosecuted or convicted. Hartnett transcribed Plaintiff's confession. Plaintiff does not allege that Hartnett incorrectly transcribed a single word that Plaintiff said or that Hartnett omitted any statements from the transcript.

The single allegation against Hartnett that could even arguably be linked to either Plaintiff's conviction or detention was Hartnett's testimony at a motion to suppress hearing. Id., ¶169. However, Hartnett's testimony is not sufficient to hold him personally liable for any constitutional violation because he has absolute immunity for that testimony. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 341-45 (1983).

Moreover, to the extent that Plaintiff is seeking to hold Hartnett liable for concealing or withholding any knowledge that he allegedly had regarding the circumstances surrounding Plaintiff's physical abuse, that theory of liability fails as a matter of law. Initially, Hartnett is not a police officer or a prosecutor and therefore, does not have a *Brady* obligation. See *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008)(holding that the duty to disclose exculpatory evidence, a Brady obligation, is a prosecutor's duty that extends to the police). Furthermore, a coerced confession alone can never constitute a *Brady* claim because a plaintiff is aware of his own confession and that knowledge cannot be suppressed. *Wallace v. City of Chicago*, 440 F.3d 421,429-30 (7th Cir. 2006).

**B.** **Plaintiff Fails to State a Claim Against Hartnett For Coercive Interrogation.**

In Count II, Plaintiff alleges that Hartnett, in conspiracy with others, used torture and other coercive techniques to interrogate Plaintiff. Dkt. 1, ¶¶325-326. However, Plaintiff does not plead any facts to demonstrate that Plaintiff had any personal involvement in torturing, coercing or interrogating Plaintiff. To the contrary, Plaintiff specifically pleads that Hartnett did not enter the

room to transcribe Plaintiff's confession until after he was tortured. Id., ¶148. Given Hartnett's clear lack of personal involvement in Plaintiff's alleged coercive interrogation, Count II should be dismissed.

### C.    Plaintiff Fails to State a Claim Against Hartnett for Conspiracy.

In Count IV, Plaintiff alleges a cause of action against Hartnett for conspiracy to deprive him of his constitutional rights. Conspiracy is not an independent basis of liability in a §1983 action. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Therefore, because Plaintiff did not plead a viable constitutional claim for the reasons noted above, he also has no actionable §1983 conspiracy claim and count IV should be dismissed.

Furthermore, even if the Court determines that Plaintiff has pled a viable constitutional claim, there are no facts pled to establish the existence of a conspiracy involving Hartnett. To establish a prima facie case of civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). Vague and conclusory allegations of the existence of a conspiracy are insufficient and a complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds. *Amundsen v. Chicago Park Dist.,* 218 F.3d 712, 718 (7th Cir.2000). In this regard, a plaintiff must allege the "what, when, why, and how" of the defendants' supposed agreement to deprive him of his constitutional rights, and merely asserting that a conspiracy existed does not meet his burden. See *Evers v. Reak*, 21 Fed. Appx 447, 450, 2001 WL 1117078 (7th Cir. 2001) (citing *Brokaw v. Mercer County*, 235 F. 3d 1000, 1016 (7th Cir. 2001)). Conspiracy claims are held to a higher standard than other allegations. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir.

2009). Where a plaintiff alleges "a vast, encompassing conspiracy...the plaintiff must meet a high standard of plausibility" before being allowed to proceed to discovery *Id*. at 971. Plaintiff fails to allege any specific conduct by Hartnett to support a factual basis for the conclusory allegation that Hartnett had either an express or implied agreement with one or more of the other defendants to deprive Plaintiff of his constitutional rights.

### D. Hartnett Cannot Be Held Liable For Any §1983 Claim On A Failure to Intervene Theory.

In Counts I and II, Plaintiff alleges that the Defendants "failed to intervene" to prevent the constitutional violations. Dkt.1, ¶¶318, 326. To the extent that Plaintiff is seeking to hold Hartnett liable for violating his constitutional rights under a failure to intervene theory, that theory is factually and legally deficient.

Courts in the Northern District of Illinois have held that prosecutors do not have a duty to prevent the police from violating a suspect's constitutional rights. See *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 773 (N.D. Ill 2012); *Gordon v. Devine*, No. 08 C 377, 2008 WL 4594354 at *17 (N.D. Ill. Oct. 14, 2008) ("neither the Seventh Circuit, nor any Northern District of Illinois court, has recognized a failure to intervene claim against a prosecutor"); *Andrews v. Burge*, 660 F. Supp.2d 868, 876 n.6 (N.D. Ill. 2009) ("In Illinois...a prosecutor does not have police powers, nor do prosecutors have command of police operations...Judge Aspen was clearly correct in deciding that the duty to intervene applicable to police officers is not to be imposed on prosecutors.) While Hartnett has not located any case law discussing whether court reporters have a duty to prevent the police from violating a suspect's constitutional rights, it would clearly stand to reason that if a prosecutor does not have a duty to intervene, a court reporter could not possibly have such a duty.

Furthermore, even assuming *arguendo* that this Court finds that a court reporter does have

a duty to intervene to prevent a police officer from violating a suspect's constitutional rights, Plaintiff fails to plead any facts to support holding Hartnett liable under this theory. A cause of action for failure to intervene requires that a constitutional violation has been committed by a law enforcement official and that the defendant had a realistic opportunity to intervene to prevent the harm from occurring. See *Yang v. Hardin*, 37 F.3d 282, 285(7th Cir. 1994). Plaintiff does not allege that Hartnett was present when he was being tortured or that he even had any contemporaneous knowledge of the torture. Therefore, Hartnett could not of had any realistic opportunity to intervene to stop the torture. Additionally, and most significantly, it is not reasonable or plausible to suggest that a court reporter had the ability or the opportunity to control or stop the actions of a law enforcement official

## VI.      HARTNETT IS ENTITLED TO QUALIFIED IMMUNITY ON COUNTS I THROUGH IV.

Even assuming *arguendo* that the Court determines that Plaintiff has pled a valid cause of action against Hartnett under §1983 for violating Plaintiff's constitutional rights, Hartnett would be entitled to qualified immunity. It is well settled that, pursuant to qualified immunity, public officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a two-pronged analysis requiring the court to determine: 1) whether the record evidences a constitutional violation; and 2) if so, whether the right violated was clearly established at the time the violation occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As argued above, Plaintiff has failed to set forth sufficient allegations that Hartnett violated his constitutional rights. However, even if this Court determines that there are sufficient facts pled to establish that Hartnett's conduct violated Plaintiff's constitutional rights, it was not clearly established in 1982 that such

conduct by a court reporter violated Plaintiff's constitutional rights. The plaintiff bears the burden of demonstrating that the right was clearly established at the time the alleged violation occurred. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017). To be clearly established, the rights' contours must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right..." *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Although the plaintiff need not point to an identical case finding the alleged conduct unlawful, a plaintiff must point to precedent placing the "statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)), or otherwise persuade the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully. See e.g. *Wheeler v. Lawson,* 539 F.3d 629, 639 (7th Cir. 2008). The issue is not just whether the plaintiff's rights were established but, whether any reasonable official at the time in question would have known that their actions, or inaction would violate plaintiff's rights. *Serrano v. Guevara*, 315 F. Supp.3d 1026, 1038 (N.D. Ill. 2018).

In1982, it was not clearly established that a court reporter had a constitutional obligation to either stop the police from physically harming a suspect or to refuse to record a confession of a suspect if the court reporter either knew or should have known that the statement was coerced. Both today and in 1982, a court reporter's role is to record what is being said. It has never been established, let alone clearly established, that a court reporter has either the discretion, the ability, or the obligation to ensure that a suspect's rights are being upheld and that the police and/or prosecutors are abiding by their constitutional obligations.

As for Plaintiff's claims against Hartnett based on a failure to intervene theory, no good faith

argument could be made that in 1982 it was clearly established that a court reporter had a legal duty to intervene to stop police officers from torturing suspects. In *Serrano*, the court dismissed failure to intervene claims brought against prosecutors on qualified immunity grounds finding that in 1993, it was not clearly established that prosecutors acting in an investigatory capacity had a duty to intervene to stop the police from committing constitutional wrongs. 315 F.Supp. at 1038-1039. If it was not clearly established that prosecutors had such a duty, there is no question that it was also not clearly established that a court reporter had a duty to intervene to stop law enforcement officials from committing constitutional violations and therefore, Hartnett is entitled to qualified immunity.

## VII. COUNTS VI THROUGH VIII MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER ILLINOIS LAW.

### A. Plaintiff Fails to State a Cause of Action for Malicious Prosecution.

To prevail on a malicious prosecution claim, a plaintiff must prove that: (1) the defendants commenced or continued the criminal proceedings against him; (2) they did so with malice; (3) they lacked probable cause; (4) the proceedings terminated in his favor in a manner indicative or innocence; and (5) he suffered damages. *Swick v. Liautaud*, 169 Ill. 2d 504, 512-513 (1996); *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 921-22 (7th Cir. 2001). The absence of any one of these elements precludes the claim. *Id.*

Plaintiff fails to allege any facts to satisfy even the first element of a malicious prosecution claim, that Hartnett "commenced or continued" the criminal proceedings against him. In order to establish the "commencement or continuing" element of a claim for malicious prosecution, a defendant must have either initiated a criminal proceeding or played a "significant role in causing the prosecution of the plaintiff." *Beaman v. Freemeyer*, 2019 IL 122654, ¶¶41-43 (2019). The defendant's conduct must have been both a cause in fact and a proximate cause of the

commencement or continuation of the original criminal proceedings." *Id.,* ¶46.

Again, Plaintiff has failed to plead any facts to suggest that Hartnett caused or continued Plaintiff's prosecution or that Hartnett played a significant role in causing Plaintiff's prosecution. Hartnett recorded the words spoken by Plaintiff. That was the extent of Hartnetts' involvement with Plaintiff. Hartnett did not make the decision to prosecute Plaintiff and he played absolutely no role influencing the decision to prosecute Plaintiff. Plaintiff has also failed to plead any facts to establish that Hartnett acted with malice or that Hartnett lacked probable cause to believe Plaintiff committed the murders.

> **B.** **Plaintiff Fails to State a Cause of Action for Intentional Infliction of Emotional Distress and the Claim is Time Barred.**

To plead a claim for Intentional Infliction of Emotional Distress ("IIED"), a plaintiff must allege: (1) extreme and outrageous conduct; (2) the actor's intent that the conduct inflict severe emotional distress or knowledge that there is a high probability that the conduct will cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003). Extreme and outrageous conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Cairel v. Alderen*, 821 F.3d 823, 835 (7th Cir. 2016). Plaintiff fails to allege any conduct by Hartnett that even conceivably could rise to the level of extreme or outrageous.

Likewise, Plaintiff's claim for IIED is also time-barred. Plaintiff alleges that Hartnett was a "contractor and agent of Cook County and its State's Attorney's Office" at the time in question. Dkt 1, ¶52, County employees are subject to the Illinois Local Government and Governmental Employees Tort Immunity Act's one-year statute of limitations. 745 ILCS 10/8-101 (West 2016). Under Illinois law, personal injury claims accrue "when the plaintiff suffers injury." See *Evans v.*

*City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006) (quoting *Golla v. General Motors Corp.*, 167 Ill.2d 353, 657 N.E.2d 894 (Ill. 1995)), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Pursuant to *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013), intentional infliction of emotional distress is not a continuing tort and it arises on the date of arrest in an arrest and prosecution case.

The conduct that is the basis of Plaintiff's IIED claim against Hartnett was the recording of Plaintiff's confession, which occurred int 1982. Plaintiff's conviction was vacated and Plaintiff's confession was ruled inadmissible in Plaintiff's criminal case in 2018. Dkt. 1, ¶211. Therefore, even assuming *arguendo* that the statute of limitations was tolled until Plaintiff's conviction was reversed in 2018, the IIED claim is untimely. While Plaintiff's prosecution continued until 2020, that prosecution was not based on Plaintiff's confession and therefore, the alleged injury caused to Plaintiff based on Hartnett recording his confession did not continue after 2018.

### C. Plaintiff Fails to State a Cause of Action for Conspiracy Under State Law.

In Count VIII, Plaintiff alleges a state law claim of conspiracy against Hartnett. However, civil conspiracy "is not a separate and distinct tort in Illinois." *Hurst v. Capital Cities Media, Inc.*, 323 Ill. App. 3d 812, 822-23 (5th Dist. 2001). There can be no civil conspiracy claim without an actionable state law claim. *Id*. Therefore, because Plaintiff fails to plead an actionable state law claim against Hartnet for intentional infliction of emotional distress or malicious prosecution as explained above, there is also no actionable conspiracy claim under Illinois law. Additionally, as argued in section V above, for the same reasons Plaintiff's federal conspiracy claim fails based on a lack of factual allegations to establish that Hartnett had either an express or implied agreement with any other Defendant, Plaintiff's state law claim of conspiracy also fails.

## <u>CONCLUSION</u>

WHEREFORE, Defendant, Michael Hartnett respectfully requests this Honorable Court dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and order any and all further relief that this Court deems appropriate.

Respectfully Submitted By:

  s/ Terry A. Ekl
Terry A. Ekl
Tracy L. Stanker
Ekl, Williams & Provenzale LLC
901 Warrenville Road, Suite 175
Lisle, IL 60532
(630) 654-1624
(630) 654-8318 *Facsimile*
tekl@eklwilliams.com
tstanker@eklwilliams.com