IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACKIE WILSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| Administrator of the Estate of Former Chicago | ) | Case No. 21 C 3487 |
| Police Department Commander Jon Burge, Mayor | ) | |
| and former State's Attorney RICHARD DALEY | ) | |
| former Chicago Police Department Detective | ) | |
| THOMAS MCKENNA, Administrator of the Estate | ) | Honorable Franklin U. Valderrama |
| of former Police Department Detective PATRICK | ) | Judge Presiding |
| OHARA, Administrator of the Estate of former | ) | |
| Chicago Police Department Detective JOHN | ) | Jury Trial Demanded |
| YUCAITIS, former Cook County ASA | ) | |
| LAWRENCE HYMAN, former Cook County ASA | ) | |
| NICHOLAS TRUTENKO; former Cook County | ) | |
| Court Reporter, MICHAEL HARTNETT, Cook | ) | |
| County Assistant State's Attorney T. ANDREW | ) | |
| HORVAT, former Assistant State's Attorney and | ) | |
| former Special City of Chicago Corp. Counsel | ) | |
| WILLIAM KUNKLE, former jailhouse informant | ) | |
| WILLIAM DAVID COLEMAN, aka ALFRED | ) | |
| CLARKSON; Administrator of Estate of former | ) | |
| Chicago Police Dept. Superintendent LEROY | ) | |
| MARTIN; former Chicago Police Department | ) | |
| Superintendent TERRY HILLARD; former OPS | ) | |
| Director GAYLE SHINES; former aide to the | ) | |
| Chicago Police Department Superintendent, | ) | |
| THOMAS NEEDHAM; CITY OF CHICAGO, | ) | |
| and COOK COUNTY, ILLINOIS, | ) | |
| Defendants. | ) | |

**DEFENDANT LAWRENCE HYMAN'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO Fed.R.Civ.P. 12(b)(1) and 12(b)(6)**

Edward R. Theobald
Law Offices of Edward R. Theobald
Attorney for Defendant LAWRENCE HYMAN
Arboretum Lakes – 901 Warrenville Road, Suite 175
Lisle, IL 60532
(312) 346-9246
Bears51@aol.com

# Table of Contents

I. Introduction ................................................................................................................. 1

II. Plaintiff's Conviction for Murder and Appeals ........................................................... 1

     Andrew Wilson: ................................................................................................... 1

     Plaintiff Jackie Wilson: ........................................................................................ 2

III. The Illinois Torture Inquiry and Relief Commission Act Is Unconstitutional ................... 3

IV. Plaintiff's Claims Against Mr. Hyman Are Barred by the Statute of Limitations ............. 4

V. Plaintiff's Irrelevant and Salacious Conclusions ........................................................ 5

VI. Standard Of Review ................................................................................................... 7

VII. All §1983 Claims against Mr. Hyman are Barred by Absolute Immunity .......................... 7

VIII. Alleged Concealment of Exculpatory Evidence ........................................................... 9

  A. Plaintiff Has No § 1983 Claim Based For Coerced Interrogation ...................................... 10

  B. Presentation of Allegedly False Evidence at Trial .............................................................. 12

  C. Alleged "Fabrication" Of Evidence ..................................................................................... 13

  D. Alleged Participation in A Conspiracy with Others ............................................................ 14

  E. Absolute Prosecutorial Immunity Also Bars Plaintiff's State Law Claims ....................... 16

IX. Mr. Hyman is Entitled to Qualified Immunity on Counts 1 through 4 .............................. 17

  A. Witness Coercion ................................................................................................................. 17

  B. Plaintiff's Alleged Failure to Intervene Claims. .................................................................. 18

  C. Alleged Conspiracy with Other ASAs Entitles Mr. Hyman to Qualified Immunity ........ 21

X. Counts 1 through 4 Must be Dismissed for Failure to Plead a §1983 Claim .......................... 21

  A. After May 1, 1982, Mr. Hyman Did Not Act Under Color of Law .................................... 22

  B. Plaintiff's Constitutional Claims Have No Merit ................................................................ 22

XI. Counts 6 through 8 Must Be Dismissed for Failure to State a Claim .................................... 23

  A. Plaintiff Fails to State a Cause of Action for Malicious Prosecution. ................................ 23

  B. Plaintiff Fails to State a Claim for IIED and the Claim is Time Barred ............................. 24

  C. Plaintiff Fails to State a Cause of Action for Conspiracy Under State Law ....................... 25

XII. Conclusion ..................................................................................................................... 25

# Table of Authorities

**Cases**

*Adickes v. Kress,* 398 U.S. 144 (1970) ................................................................ 22

*Anderson v. Simon*, 217 F.3d 472 (7th Cir. 2000) ............................................. 19

*Andrews v. Burge*, No. 08 C 5874, 660 F. Supp. 2d 868 (N.D. Ill. 2009) ........... 8, 19, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 6

*Avery v. City of Milwaukee,* 847 F.3d 433 (7th Cir. 2017) ................................. 10, 18

*Beaman v. Freesmeyer*, 2019 IL 122654 (2019) ................................................ 23

*Best v. Taylor Mach. Works.,* 179 Ill. 2d 367 (1997) .......................................... 3

*Bianchi v. McQueen,* 818 F.3d 309 (7th Cir. 2016) ............................................ 20

*Brady v. Maryland,* 373 U.S. 83 (1963) ............................................................. 10,11,12,13

*Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013) ............................................. 24

*Briscoe v. LaHue* (1983), 460 U.S. 325 (1983) .................................................. 12

*Buckley v. Fitzsimmons, (Buckley IV),* 20 F.3d 789 (7th Cir. 1994) ................... passim

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) .................................................. 8, 12

*Chicago National League Ball Club, Inc.,* 108 Ill. 2d 357 (1985) ....................... 3

*Collins v. Vill. of Palatine*, 875 F.3d 839 (7th Cir. 2017) .................................... 4

*Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009) ............................................. 15, 16

*Davenport v. Dovgin*, 545 F. App'x 535, 538 (7th Cir. 2013) ............................. 24

*Davis v. Zirkelbach*, 149 F.3d 614 (7th Cir. 1998) ............................................. 19

*Denton v. Allstate Ins. Co.,* 504 N.E.2d 756 (Ill. App. Ct. 1986) ........................ 24

*Fields v. Wharrie* ("*Fields I*"), 672 F.3d 505 (7th Cir. 2012) .............................. 10, 12

*Fields v. Wharrie* ("*Fields II*"), 740 F.3d 1107 (7th Cir. 2014) ........................... 13, 17, 18

*Fries v. Helsper,* 146 F.3d 452 (7th Cir. 1998) ................................................... 15, 16, 22

*French v. Corrigan*, 432 F.2d 1211 (7th Cir. 1970) ................................................................ 14

*Gordon v. Devine*, No. 08 C 377,
  2008 U.S. Dist. Lexis 81234 (N.D. Ill. Oct. 14, 2008) ................................................. 12, 13, 19

*Green v. Newport*, 868 F.3d 629 (7th Cir. 2017) ................................................................ 17

*Haliw v. City of S. Elgin*, No. 19 c 1515,
  2020 U.S. Dist. Lexis 47329 (N.D. Ill. Mar.18, 2020) ........................................................... 21

*Hampton v. City of Chicago*, No. 04 C 3456, 349 F. Supp.2d 1075 (N.D. Ill. 2004)................... 14

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..................................................................... 17

*Heck v. Humphrey,*512 U.S. 477 (1994) ...................................................................... 5, 25

*Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986)................................................ 8

*Hill v. Coppleson,* 627 F.3d 601 (7th Cir. 1997) ................................................................ 11

*Hobbs v. Cappelluti*, No. 10 C 7649, 899 F. Supp. 2d 738 (N.D. Ill**.** 2012) ................................. 17

*House v. Belford*, 956 F.2d 711 (7th Cir. 1992) .................................................................. 15

*Hunt v. Jaglowski*, 926 F. 2d 689 (7th Cir 1991).............................................................. 9, 23

*Hurst v. Capital Cities Media, Inc.*, 323 Ill. App. 3d 812 (5th Dist. 2001) ...................................... 25

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ............................................................... passim

*Johnson v. City of Chicago*, No. 15 C 7177,
  2016 U.S. Dist. Lexis 66361 (N.D. Ill. May 20, 2016); ........................................................ 11

*Johnson v. Winstead,* 900 F.3d 428 (7th Cir. 2018) ....................................................... 4, 5, 11

*Kitchen v. Burge,* No. 10 C 4093, 781 F. Supp. 2d 721 (N.D. Ill. 2011)................................... 8, 16

*Logan v. Chicago*, 891 F. Supp. 2d 897 (N.D. Ill. 2012)............................................................ 2

*Lunini v. Grayeb*, 395 F.3d 761 (7th Cir. 2005) .................................................................. 20

*McDonough v. Smith,* 139 S. Ct. 2149, 2157 (2019) ................................................................ 5

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ......................................................................... 8

*Mullenix v. Luna*, 577 U.S. 7 (2015)............................................................................ 17

*Ochoa v. Lopez,* No. 20 cv 2977,
    2021 U.S. Dist. Lexis 185420 (N.D. Ill. Sept. 28, 2021)......................................... 21

*Palmer v. Marion City,* 327 F.3d 588 (7th Cir. 2003) ................................................. 22

*Patrick v. City of Chicago*, No. 14 cv 3658, 213 F. Supp. 3d 1033 (N.D.Ill.2016)............... 20, 21

*Pearson v. Callahan,* 555 U.S. 223 (2009)................................................................... 17

*People v. Gersch*, 135 Ill. 2d 384 (1990) ..................................................................... 3

*People v. Rhodes*, 38 Ill. 2d 389 (1967)...................................................................... 13

*People v. Schraeberg*, 347 Ill. 392 (1932) ................................................................... 3

*People v. A. Wilson,* 116 Ill. 2d 29 (Ill. 1987) ......................................................... 1, 5

*People v. A. Wilson*, 254 Ill. App. 3d 1020 (1st Dist. 1993)............................................ 2

*People v. J. Wilson,* 161 Ill. App. 3d 995 (1st Dist. 1987) ............................................. 2

*People v. J. Wilson,* 2019 IL App (1st) 181486.................................................... 1, 2, 4

*People v. J. Wilson,* 257 Ill. App. 3d 670 (1st Dist. 1993) ............................................. 2

*Petty v. Chicago,* 754 F.3d 416 (7th Cir. 2014)........................................................... 11

*Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015).................................................... 12

*Scherer v. Balkema*, 840 F.2d 437 (7th Cir. 1988) ...................................................... 15

*Serrano v. Guevara*, No. 17 cv 2869, 315 F. Supp. 3d 1026 (N.D. Ill. 2018)...................... 20, 21

*Smith v. City of Chicago*, 3 F. 4th 332 (7th Cir. 2021) ........................................ 5, 23, 25

*Smith v. Gomez*, 550 F.3d 613 (7th Cir. 2008) ............................................................ 15

*Smith v. Power*, 346 F.3d 740 (7th Cir. 2003) .............................................................. 9

*Sornberger v. City of Knoxville,* 434 F.3d 1006 (7th Cir. 2006) .................................... 10

*Spiegel v. Rabinovitz,* 121 F.3d 251 (7th Cir. 1997)................................................. 8, 19

*Spiegel v. Rabinowitz*, No. 95 C 4449, 924 F. Supp. 883 (N.D. Ill. 1996) ....................... 8

*Stump v. Sparkman*, 435 U.S. 349 (1978)...............................................................................8

*Szczesniak v. CJC Auto Parts, Inc.,* 21 N.E. 3d 486, 490 (Ill. App. Ct. 2014) ..................... 23, 24

*Tobey v. Chibucos,* 890 F.3d 634 (7th Cir. 2018)................................................................. 16

*Wallace v. Kato,* 549 U.S. 384 (2007) ....................................................................................5

*White v. City of Chicago*, 369 Ill. App. 3d 765 (1st Dist. 2006)................................ 13, 14, 15, 16

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) .......................................... 16, 18, 20, 22

*Williams v. Lampe,* 399 F.3d 867 (7th Cir. 2005).............................................................. 24

*Wilson v. Chicago,* 120 F.3d 681 (7th Cir. 1997) ................................................................ 2, 5

*Wilson v. Wexford Med. Servs.,* No. 17 C 2561,
    2017 U.S. Dist. Lexis 222641, (N.D.Ill. May 3, 2017), *rev'd on other grounds,*
    751 Fed. Appx. 956 (7th Cir. 2019)..................................................................................5

*Wolfe-Lillie v. Sonquist*, 699 F.2d 864 (7th Cir. 1983)............................................... 18

*Wrice v. Burge*, No. 14 C 5934, 187 F. Supp. 3d 939 (N.D. Ill. 2015) ................................. 13, 17

*Yang v. Hardin,* 37 F.3d 282 (7th Cir. 1994) ....................................................................... 19, 21

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ........................................................................... 21

**Statutes**
42 U.S.C. §1983.................................................................................................... passim
55 ILCS §5/3-9005 ...................................................................................................... 19
Illinois Torture Inquiry and Relief Commission Act, 775 ILCS 40/1 *et seq* ................... 2, 3, 4,25

**Rules**
Fed.R.Civ.P. 12(b)(1)..................................................................................................... 1
Fed.R.Civ.P. 12(b)(6).......................................................................................... 1, 4, 14, 19
Fed.R.Civ.P. 20 .............................................................................................................. 7

Now comes Defendant, Lawrence Hyman, by and through his attorney, Edward R.
Theobald, and pursuant to this Court's order granting Defendant Hyman leave to file his 25-page
Motion to Dismiss (R.67), Defendant Hyman moves to dismiss Plaintiff's complaint pursuant to
Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6) and states as follows:

## I.                                        Introduction

This case is about two harden criminals, brothers Andrew Wilson and Jackie Wilson and
the cold-blooded murders of two of Chicago's finest young Police Officers on February 9, 1982:
William Fahey, age 34 and Richard O'Brien, age 33. Chicago police officers Fahey and O'Brien
stopped a car driven by plaintiff Jackie Wilson, with his brother, Andrew Wilson a passenger.
After exiting their vehicles, a struggle ensued involving Andrew Wilson and Officer Fahey.
Andrew Wilson murdered Officer Fahey by shooting him in the back of the head with the
officer's revolver. Andrew Wilson murdered Officer O'Brien by shooting him many times. With
the officers laying on the street dying from mortal wounds, Jackie Wilson drove his brother
away. On February 14, 1982, Andrew and plaintiff Jackie Wilson were arrested and each gave a
court-reported statement to then Assistant State's Attorney ("ASA") Lawrence Hyman,
Supervisor, Felony Review Unit, Cook County State's Attorney's Office (SAO), who made the
decision whether to approve the officers' requests for charges. *People v. J. Wilson,* 2019 IL App
(1st) 181486 ¶6-10 (Plaintiff's Complaint R. 1,¶¶6,49, 57,79-89,107).

## II.  Plaintiff's Conviction for Murder and Appeals

**Andrew Wilson:** On February 4, 1983, Jackie Wilson and Andrew Wilson were found
guilty of armed robbery and the murders of Officers Fahey and O'Brien. The jury's sentence was
death for Andrew Wilson.  The Illinois Supreme Court reversed finding his statement was
involuntary. *People v. A. Wilson,* 116 Ill. 2d 29, 42 (Ill. 1987). Andrew Wilson was retried,
convicted, and sentenced to life in prison for the murders and armed robbery.  *People v. Wilson,*

254 Ill. App. 3d 1020, 1024-27 (1st Dist. 1993). In 1989, Andrew Wilson brought a suit for

damages under 42 U.S.C. §1983, claiming that he was coerced into making a statement denying

him due process.  Andrew Wilson named many of the same defendants his brother Jackie named

in this case, albeit 32 years later. Andrew Wilson recovered damages, later admitted to another

murder and died in prison.  *Wilson v. Chicago* 120 F.3d 681, 683 (7th Cir. 1997); *Logan v.*

*Chicago*, 891 F. Supp. 2d 897, 900 (N.D. Ill. 2012).

**Plaintiff Jackie Wilson**: As a result of his involvement in the murders of the officers, Jackie

Wilson was sentenced on February 4, 1983, to life in prison. In 1987, Jackie Wilson's conviction

was reversed.  *People v. J. Wilson,* 161 Ill. App. 3d 995, 1008 (1st Dist. 1987).  In 1989, plaintiff

Jackie Wilson was again found guilty of armed robbery of the officers' revolvers and the murder

of Officer O'Brien.  *People v. J. Wilson,* 257 Ill. App. 3d 670, 707 (1st Dist. 1993). In May, 2015,

22 years later, (unconstitutional) special legislation entitled the Illinois Torture Inquiry and

Relief Commission Act ("TIRC"), 775 ILCS 40/1 *et seq.* was passed and Plaintiff made a

complaint at the TIRC.  With no rules and no burden of proof at the TIRC, Plaintiff's complaint

at the TIRC was then referred to the Circuit Court of Cook County for review.  On June 20,

2018, pursuant to the TIRC "special legislation," Judge William Hooks granted plaintiff Jackie

Wilson's motion to suppress his statements, vacated his convictions and granted Plaintiff a new

trial.  Plaintiff was then released from custody, on bond and the accrual date for plaintiff to file a

lawsuit commenced on June 20, 2018. (R.1, ¶¶26, 211, 311); *People v. J. Wilson,* 2019 IL App

(1st) 181486.  However, plaintiff did not file a lawsuit against Mr. Hyman in two years or by

June 20, 2020. (R.1) On September 22, 2020, a "special prosecutor" began a third prosecution,

this time without Plaintiff's 1982 statement, which concluded abruptly and surprisingly on

October 1, 2020, with the "special prosecutor" dismissing all charges before a decision. (¶27-31).

### III. The Illinois Torture Inquiry and Relief Commission Act Is Unconstitutional

The cold-blooded 1982 murders of Officers William Fahey and Richard O'Brien is still in the courts as a result of Illinois enacting "special legislation:" "Illinois Torture Inquiry and Relief Commission Act" ("TIRC") 775 ILCS 40/1. However, this "special legislation" is unconstitutional on its face, since it could only be enforced against one person within the State of Illinois, Jon Burge, now deceased, a former police Lieutenant. Additionally, TIRC is an unconstitutional Executive infringement on final judicial judgments by political bureaucrats with no due process for victims guaranteed by the Illinois Constitution. *Best v. Taylor Mach. Works,* 179 Ill. 2d 367, 410 (1997). TIRC was amended by P.A. 99-688 in 2016, to apply only to Cook County, yet still unconstitutionally restricts enforcement to the exclusion of the other 101 Illinois counties, an arbitrary classification violating the Illinois Constitution. *Chicago National League Ball Club, Inc.,* 108 Ill. 2d 357, 369 (1985). The TIRC is "unconstitutional" in its entirety and is void *ab initio*, or in other words, the invalid law is no law at all. An unconstitutional law confers no right, imposes no duty and affords no protection. It is as if no such law had ever been passed. *People v. Schraeberg*, 347 Ill. 392, 394 (1932). "The effect of enacting an unconstitutional statute is to leave the law in force as it was before its enactment." *People v. Gersch*, 135 Ill. 2d 384, 390 (1990). Therefore, Plaintiff's original filing at TIRC and TIRC's subsequent return of "Plaintiff's case to the Cook County Criminal Court for a hearing on the issue of whether Plaintiff's confession was tortured from him" were all for naught as TIRC was and is "invalid and no law at all." *Id.* (¶ 25) Thus, the State's motion for nolle prosequi on October 1, 2020, and the Order of dismissal are equally invalid. *Id.* The TIRC is also unconstitutional as the Circuit Court failed to comply with Section 8.1 Victim Rights of the Illinois Constitution:

> The right to 1. be treated with fairness and respect for their dignity and privacy and to be free from harassment, and abuse throughout the criminal justice process; 2. to timely notification of all court proceedings; 3. to communicate with the prosecution; 4. be heard; 5. be notified of

3

the release of the accused; 6. timely disposition of the case following the arrest of the accused; 7. have the safety of the victim and the victim's family considered in denying or fixing bail, determining whether to release the defendant, and setting conditions of release after arrest and conviction; 8. *be present at the trial and all other court proceedings on the same basis as the accused*; 9. have present at all court proceedings, *subject to the rules of evidence*, an advocate and other support person of the victim's choice; 10. restitution.

Here, the rights of murdered police officers' survivors including a sister, wife and two children ages 1 and 4 years old were not respected by TIRC, the Court or the State. Nevertheless, (in error) on June 20, 2018, pursuant to the unconstitutional TIRC, the Cook County Circuit Court suppressed plaintiff's statements, vacated his convictions, and granted a new trial. Plaintiff was released from custody, and the statute of limitations commenced for plaintiff to file a civil lawsuit. (R.1, ¶¶26, 209-211, 311); *People v. Wilson,* 2019 IL App (1st) 181486 ¶¶46-47. But for the unconstitutional enactment of TIRC, plaintiff would still be incarcerated. *Id.*

### IV. Plaintiff's Claims Against Mr. Hyman Are Barred by the Statute of Limitations

"Although the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) . . . is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017). Plaintiff seeks to hold ASA Hyman legally responsible for the statement Jackie Wilson gave to ASA Hyman in 1982 that Plaintiff alleges was used to detain, prosecute and convict Plaintiff at jury trials in 1983 and 1989. This is the basis for Plaintiff's constitutional claims in Counts 1-4 against ASA Hyman. (¶11-15, 26). However, the limitations period is two years for § 1983 claims in Illinois. *Johnson v. Winstead,* 900 F.3d 428, 434 (7th Cir. 2018). On June 20, 2018, the Circuit Court overturned Jackie Wilson's conviction, suppressed his statement and released Jackie Wilson on bond. (¶26, 211, 275, 311) Thus, the accrual date for any §1983 claim based upon Plaintiff's statement started in June of 2018. At that time, Plaintiff was able to bring a §1983 claim (i.e., whether he was coerced into making a statement on February 14, 1982) that would not have

impugned the criminal proceedings later instituted by the State. *Wallace v. Kato,* 549 U.S. 384, 388 (2007). Plaintiff acknowledges his June 2018 accrual, when he pleads that his statement was not used to detain or prosecute him at his third trial in 2020, and that the primary evidence used was *independent and unrelated* to February 14, 1982, and unrelated to ASA Hyman. (¶27,213). Unlike *McDonough*, who could not bring his fabricated-evidence claim under §1983 until favorable-termination as established in *Heck v. Humphrey,*512 U.S. 477, 487 (1994) and its concerns with avoiding parallel criminal and civil litigation over the same subject matter and the possibility of conflicting civil and criminal judgments, Jackie Wilson, like his brother Andrew[1] before him, faced no such obstacle while awaiting a retrial. *McDonough v. Smith,* 139 S. Ct. 2149, 2157 (2019). *Heck* does not apply to claims where a conviction is "merely anticipated." *Id*. Thus, Plaintiff's claims against Mr. Hyman could have been filed in June 2018 as those allegations would not have undermined the prosecution's retrial and were not subject to tolling. *See Johnson,* 900 F.3d at 439; *Smith v. City of Chicago*, 3 F. 4th 332, 339 (7th Cir. 2021).

Mr. Hyman adopts all arguments raised in Defendant Hartnett's motion (R.59, Page ID#:267-270) and the City Defendants' Joint Motion to Dismiss (R.68-1, Section D1-D5) that Plaintiff's claims are barred by the Statue of Limitations.

### V. Plaintiff's Irrelevant and Salacious Conclusions

Plaintiff's complaint covers 39 years, seeks damages against no less than 17 Defendants, many who never spoke or met each other, and seeks to present claims allegedly made by no less than 75 others of police abuse.[2] (R.1, *inter alia* ¶¶2, 16, 38-56, 61-78, 85-167, 227-375). Yet,

---

[1] After the Illinois Supreme Court reversed Andrew Wilson's conviction, ruling that his statement had been coerced, *Wilson,* 116 Ill. 2d 29, Andrew Wilson sought damages under §1983, claiming violations of his constitutional rights and recovered a judgment. *Wilson v. Chicago,* 120 F.3d 681 (7th Cir. 1997).

[2] This Court can take notice that Plaintiff filed at least 17 other cases and at least three were dismissed as frivolous. *Wilson v. Wexford Med. Servs.,* 2017 U.S. Dist. Lexis 222641 *2, No. 17 C 2561 (N.D.Ill. May 3, 2017), *rev'd on other grounds,* 751 Fed. Appx. 956 (7th Cir. 2019).

very little of plaintiff's complaint pertains to Mr. Hyman and certainly nothing is alleged establishing that he acted outside his duties as an ASA. After Plaintiff's arrest on February 14, 1982, the police requested the SAO Felony Review Unit to approve charges against Andrew Wilson and Plaintiff Jackie Wilson. Plaintiff who sat and spoke with Mr. Hyman in the presence of a court reporter transcribing their conversation never made any accusation Mr. Hyman treated him unfairly. Further, there are no facts pled that Mr. Hyman witnessed any abuse. (¶142, 145-146, 148). Nevertheless, Plaintiff alleges that former ASA Hyman wrongfully approved charges and that Mr. Hyman, himself, prosecuted him even though Mr. Hyman never appeared in court as trial counsel during the past 39 years. (¶188) Plaintiff's complaint is filled with tenuous conclusionary allegations regarding what other defendants allegedly did outside Mr. Hyman's presence and because of that, Plaintiff unjustly seeks to hold Mr. Hyman responsible for the actions of others. However, the law has never imposed any duty on an ASA to supervise police. Despite Mr. Hyman's non-involvement with Plaintiff after February 14, 1982, Plaintiff seeks to link Mr. Hyman with 39 years of unrelated events and individuals. (¶¶1-10,12-17, 19-48, 50-99, 101-104; 106-141, 144-147, 151-158, 160-241, 243-375).

Plaintiff insufficiently pleads seven causes of action against Mr. Hyman: Due Process (Count 1); Coercive Interrogation (Count 2); Deprivation of Liberty without Probable Cause (Count 3); Conspiracy to Deprive Constitutional Rights (Count 4); State Malicious Prosecution (Count 6); IIED (Count 7); and Conspiracy (Count 8). However, plaintiff fails to plead facts that Mr. Hyman committed any acts that are the basis of any constitutional or state law claim and even if he did, all claims are untimely, and Mr. Hyman is entitled to prosecutorial and qualified immunity requiring dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**VI.** **Standard Of Review -** Mr. Hyman adopts the standard of review in Defendants' briefs as if set forth herein, including Motions to Dismiss filed by Defendants Trutenko (R.47, pp.6-7) Horvat (R.58, p.3) Hartnett (R.59, pp.2-3) and the City Defendants (68-1, p.2).

Fed.R.Civ.P. 20 allows a plaintiff to join many defendants so long as they arise out of the "same transaction, occurrence, or series of transaction or occurrences" ***and*** "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20 (a)(2). However, Mr. Hyman's involvement occurred on one single day: February 14, 1982 and was substantially different than not only the other 16 defendants, but his job duties themselves were uniquely different than the 1000 or so employees in the SAO. Mr. Hyman's duties on February 14, 1982, were to ask questions of Andrew Wilson and Jackie Wilson and to approve or disapprove an officer's request to charge plaintiff with felonies which are protected by absolute and qualified immunity. These questions of law are not similar to that of a court reporter, or detectives and superintendents or an international jailhouse informant trial witness, nor are they similar to other members in the SAO such as First Deputy State's Attorney Kunkle who prosecuted Plaintiff many years after Mr. Hyman resigned on May 1, 1982, or Defendant ASA Horvat, who was 7 years old in 1982.(R.58, p.1) Plaintiff's attempt to seek damages against Mr. Hyman for the conduct of 16 other defendants over a 39-year period is preposterous. *Id.*

**VII.** **All §1983 Claims against Mr. Hyman are Barred by Absolute Immunity**

Plaintiff alleges that the Defendants Daley, Burge, O'Hara, McKenna, Yucaitis, Hartnett and Hyman caused the wrongful charging, prosecution, conviction and imprisonment of Plaintiff. (¶315). However, Plaintiff's allegations against former ASA Hyman, involve one day, February 14, 1982, and because his decision-making mental processes to approve charges for Plaintiff's criminal conduct (who on February 9, 1982, knowingly assisted his brother Andrew Wilson murder officers Fahey and O'Brien), he is entitled to absolute prosecutorial immunity. ASA

Hyman is entitled to "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is well settled that prosecutors are absolutely immune from damages for any actions they take that are preparing for the initiation of judicial proceedings …, and which occur in the course of his role as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976). Mr. Hyman is completely immune from liability regarding the decision to approve charges for Jackie Wilson as that decision is at the very core of prosecutorial immunity. *Imbler,* 424 U.S. at 421. Absolute immunity shields prosecutors even if they "initiate charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986). For purposes of absolute immunity, it is irrelevant whether the prosecutor acted negligently, with malice, or in bad faith. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Rather, a court must focus on the conduct for which immunity is claimed, not any harm the conduct may have caused. *Buckley,* 509 U.S. at 271; *Spiegel v. Rabinovitz,* 121 F.3d 251, 257 (7th Cir. 1997)(an ASA is vested with the exclusive discretion in deciding what charges to approve).

As a matter of law, ASA Hyman's activities interviewing Plaintiff after his arrest and questioning by the police, that occurred after plaintiff agreed to make a court reported statement (R.1, ¶148) – relates directly to the initiation of the prosecution, entitling him to absolute immunity. *Spiegel v. Rabinowitz*, No. 95 C 4449, 924 F. Supp. 883, 888 (N.D. Ill. 1996) citing *Imbler*. *See also*: *Andrews v. Burge*, No. 08 C 5874, 660 F. Supp. 2d 868, 878 (N.D. Ill. 2009) (The prosecutor acts within his core functions when he evaluates the evidence gathered by police and, in the case of a confession, takes steps to see that the words of the defendant are properly preserved); *accord Kitchen v. Burge,* No. 10 C 4093, 781 F. Supp. 2d 721, 731 (N.D. Ill. 2011).

Furthermore, Plaintiff's argument that ASA Hyman knew or should have known that Plaintiff's statement was coerced has been rejected. In *Hunt v. Jaglowski*, 926 F. 2d 689, 692 (7th Cir 1991), the Seventh Circuit rejected a §1983 claim that an ASA knew of coercion, shared in its goal and contributed to its effectiveness. *Id.* at 692. In similar allegations to the instant case, *Hunt* alleged giving an involuntary statement after telling the ASA that he had been beaten and was not permitted to contact his attorney. (R.1, ¶142-143, 148) In *Hunt*, the plaintiff alleged that he showed the attorney bruises from the police and that the attorney said that there was nothing he could do – as he was just there to take Hunt's statement – and left the room, wherein a police officer reentered the room and threatened the arrestee. *Id* at 691-92. The court in *Hunt* found that plaintiff had no contact with the ASA until after he had made a statement to the police and agreed to give a statement. *Id*. At 692-693. The ASA was not present during any of events of the alleged coercion or when the statement to the police was given. Rather, in *Hunt*, the plaintiff's initial contact with the prosecutor came only after he gave a statement to the police, like here. *Id.* Because the ASA's role was merely to approve charges requested by police, the attorney's conduct, as here, constituted an act toward "initiating a prosecution and in presenting the state's case," entitling him to absolute immunity. *Id.*

Likewise, here, Plaintiff's allegations do not allege that Mr. Hyman was present for, and took part in, any alleged abuse nor are there allegations that Mr. Hyman engaged in conduct unrelated to the initiation of judicial proceedings. In fact, Plaintiff mistakenly seeks to hold Mr. Hyman *liable for his decision to indict* Plaintiff for which Mr. Hyman is entitled to absolute immunity. *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003).

**VIII.   Alleged Concealment of Exculpatory Evidence**

In so far as Plaintiff accuses ASA Hyman of suppressing exculpatory evidence, such

9

claims fail as courts routinely dismiss *Brady* claims asserted against prosecutors on absolute immunity grounds. *Imbler*, 424 U.S. 995-96 n.34.

## A. Plaintiff Has No § 1983 Claim Based For Coerced Interrogation

Plaintiff asserts that part of his Due Process claim relates to the alleged failure to communicate to others that Plaintiff's confession was the result of coercion, including the alleged failure to testify truthfully at Plaintiff's criminal trial and suppression hearing. This claim is without merit as such evidence cannot be said to have been suppressed in violation of *Brady* since it was allegedly already known to Plaintiff. *Avery v. City of Milwaukee,* 847 F.3d 433, 443 (7th Cir. 2017) (a Plaintiff cannot base a *Brady* claim on defendant's failure to disclose plaintiff's own false statement); *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1029 (7th Cir. 2006). Plaintiff's claims based on the alleged suppression of the circumstances of his own interrogation and the failure to testify truthfully about it, must be dismissed. *Id.*

Plaintiff's allegations regarding coercive statements of others only violates that witness's rights, and only provides Plaintiff with a constitutional claim if not disclosed at trial. *Buckley v. Fitzsimmons, (Buckley IV)*, 20 F.3d 789, 794 (7th Cir. 1994). In *Buckley IV*, the plaintiff alleged that prosecutors coerced two witnesses to falsely implicate him in a murder investigation. *Id.* Since the alleged coercion of witnesses did not itself violate Plaintiff's own rights, it could only constitute a violation by presentation of the allegedly fabricated evidence at a grand jury or trial, for which the prosecutors would be entitled to absolute immunity even if they presented unreliable or wholly fictitious proofs. *Id. see also*: *Imbler*, 424 U.S. at 430, n. 32 and n.34 (absolute prosecutorial immunity extends to willfully suppressing exculpatory matters). In *Fields v. Wharrie* (*"Fields I"*), 672 F.3d 505, 514 (7th Cir. 2012), the court held "*Brady* and *Giglio* violations breach a defendant's *trial rights* and are, thus, inherently prosecutorial" and fall

"comfortably within the scope of prosecutorial immunity." *Buckley IV,* 20 F.3d at 794. Plaintiff

seeks to hold Mr. Hyman liable not only for his statement, but of others who allegedly gave

statements that were coerced implicating Plaintiff and his brother at the scene of the crime.

However, prosecutorial immunity precludes any liability to Mr. Hyman *relying* on the alleged

"fabricated" statements of others when he approved the charges against plaintiff. *Buckley IV*, at

794-96 (prosecutor entitled to qualified immunity where he solicited, coerced and paid for false

testimony). Plaintiff's allegations regarding coerced testimony involve one day, February 14,

1982, *after* probable cause established the Wilson brothers were responsible for the officers'

murders and after their arrests. *Hill v. Coppleson,* 627 F.3d 601, 605 (7th Cir. 1997).

Furthermore, Plaintiff cannot argue in good faith that he was prohibited from arguing

witnesses testifying against him at his 1983 trial and 1989 retrial were not impeachable or

subject to the suspicion of testifying under coercion. Notably, Plaintiff's complaint exaggerates

the (false) portrayal that Chicago was turned upside down following the murders of Officers

Fahey and O'Brien and that other individuals made complaints regarding the alleged coerced

interrogations used to arrest those responsible. (R.1, ¶¶16-17, 57-62). However, *Brady* claims

are precluded against officers who failed to disclose the coercive circumstances surrounding the

statements of prosecution witnesses when the defendant already knew of those circumstances.

*Petty v. Chicago,* 754 F.3d 416, 423-424 (7th Cir. 2014). Here, Plaintiff sought to suppress his

statement and was aware brother Andrew Wilson did as well. (R.1,¶168-172). Therefore,

Plaintiff's feigned unawareness of impeaching or exculpatory facts hidden from him that others

were allegedly coerced is belied by Plaintiff's own complaint. *Johnson v. City of Chicago*, No.

15 C 7177, 2016 U.S. Dist. Lexis 66361*4 (N.D. Ill. May 20, 2016); *rev'd on other grounds*,

*Johnson v. Winstead,* 900 F.3d 428 (7th Cir. 2018) (dismissing *Brady* claim against prosecutors

based on alleged failure to disclose evidence indicating that material witness may have been coerced and promised leniency because "such alleged conduct involved discovery obligations and related to the inherent prosecutorial function of [the] ASA Defendants); *Gordon v. Devine*, No. 08 C 377, 2008 U.S. Dist. Lexis 81234 * 41 (N.D. Ill. Oct. 14, 2008)(suppression of exculpatory evidence "fit[s] soundly within the protection of absolute immunity afforded to prosecutors"). A *Brady* claim based on a failure of an ASA to disclose his alleged misconduct is also baseless. *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015).

**B.      Presentation of Allegedly False Evidence at Trial**

Mr. Hyman left the SAO a year before plaintiff's case went to trial in 1983. Plaintiff's claim that Mr. Hyman knowingly presented false testimony at plaintiff's criminal trial or suppression hearings similarly fail as he is entitled to absolute testimonial immunity, including the preparation of that testimony and its delivery in court. *Briscoe v. LaHue*, 460 U.S. 325, 345-6 (1983). In *Imbler*, the Supreme Court declined to find a distinction between the knowing use of perjured testimony and the deliberate withholding of exculpatory evidence, explaining that "[a] claim of using perjured testimony simply may be reframed and asserted as a claim of suppression of the evidence upon which the knowledge of perjury rested." *Imbler*, 424 U.S. at 431 n.34; *see also Buckley I*, 509 U.S. at 270 (prosecutors absolutely immune from § 1983 suit "for eliciting false or defamatory testimony from witnesses or for making false or defamatory statements during judicial proceedings). Following *Imbler*, the Seventh Circuit and district courts have similarly held that a prosecutor's use of knowingly false testimony at trial is covered by absolute immunity. *Fields I*, 672 F.3d at 517 (ASA entitled to absolute immunity for his alleged solicitation of false testimony and allegedly concealing false testimony); *Buckley IV,* 20 F.3d at 795 ("Prosecutors are entitled to absolute immunity for actions even if they present unreliable or

wholly fictitious proofs."); *Wrice v. Burge*, No.14 C5934, 187 F. Supp. 3d 939, 947 (N.D. Ill. 2015)("Presenting evidence is a core prosecutorial function, protected by absolute prosecutorial immunity and therefore an insuperable bar to an award of damages in a suit for malicious prosecution.") *see also*: *Fields v. Wharrie* ("*Fields II*"), 740 F.3d 1107, 1111 (7th Cir. 2014).

### C. Alleged "Fabrication" Of Evidence

Mr. Hyman is also entitled to absolute immunity for his alleged presence, not in the interrogation room itself, but the large Area 2 building where the officers allegedly pressured witnesses to implicate plaintiff for murder. "The State's Attorney is the representative of the People and has the responsibility of evaluating the evidence and other pertinent factors and determining what offense can properly and should properly be charged." *People v. Rhodes*, 38 Ill. 2d 389, 396 (1967). Those responsibilities include interviewing witnesses and evaluating whether charges should be filed in the first place. *Imbler*, 424 U.S. at 431 n.33 (actions taken "preliminary to the initiation of a prosecution" including the collection, review, and evaluation of evidence, are covered by absolute immunity); *see also Wrice,* 187 F. Supp. 3d at 947 (allegations that the prosecutor violated constitutional rights when she allegedly threatened witnesses, failed to disclose that she did so, misrepresented location of witnesses, and manufactured testimony implicating plaintiff barred by absolute immunity); *Gordon v. Devine*, 2008 U.S. Dist. Lexis 81234 *32-50 (prosecutorial immunity barred claims regarding decision to prosecute, knowing indictment was false, presenting fabricated testimony and failed to tender evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963)).

In *White v. City of Chicago*, 369 Ill. App. 3d 765, 766 (1st Dist. 2006) the court granted the State's Attorney absolute prosecutorial immunity despite Plaintiff's allegations that the SAO (1) reinvestigated the murder for which the plaintiffs were charged and determined there was no

connection to the crime; (2) determined that another person committed the murders; (3) determined that the main prosecution witness was untruthful; (4) determined that the physical evidence did not support the charges; (5) the prosecutor bribed a prosecution witness to testify falsely before the grand jury; and (6) suppressed all this information. The court held the ASAs' acts interviewing witnesses fell within the purview of "the obtaining, reviewing, and evaluating of evidence" that is required to prepare for the initiation of the criminal process and a trial. *Id.* at 772 (quoting *Imbler*, 424 U.S. at 431 n.33). Here, as in *White*, while plaintiff alleges that Mr. Hyman was in the building when police pressured witnesses to implicate plaintiff in the Fahey and O'Brien murders, the *factual* allegations are that Mr. Hyman participated in interviewing suspects and witnesses in the course of bringing charges on behalf of the State that are all part of initiating a judicial proceeding for which Mr. Hyman is absolutely immune. *Id.* Interviewing witnesses, interviewing arrestee, reading arrestee *Miranda* rights, and approving charges are all prosecutorial duties entitled to absolute immunity. *Hampton v. City of Chicago*, No. 04 C 3456, 349 F. Supp.2d 1075, 1081 (N.D. Ill. 2004); *see also*: *Imbler*, 424 U.S. at 431 n.33.

### D. Alleged Participation in A Conspiracy with Others

Plaintiff's conclusory and vague allegations that Mr. Hyman was part of a conspiracy involving 16 other defendants that spanned across 39 years and through different governmental entities does not defeat ASA Hyman's absolute immunity. *French v. Corrigan*, 432 F.2d 1211, 1214-15 (7th Cir. 1970) (holding that prosecutors did not lose their immunity by reason of alleged conspiracy). In *Imbler*, plaintiff alleged a conspiracy between prosecutor and police, causing him to be wrongfully charged and convicted through false testimony and the suppression of exculpatory evidence. *Imbler*, 424 U.S. at 416. In affirming dismissal pursuant to Rule 12(b)(6), the Court ruled that despite the nature of the plaintiff's "conspiracy" allegations, the

14

prosecutor was absolutely immune because his activities were intimately associated with the judicial phase of the criminal process. *Id*. at 431. *See also*: *White,* 369 Ill. App. 3d at 777; *House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992) (government witness entitled to immunity for testimony at a hearing even though he testified in furtherance of a conspiracy). Under federal and state law, Mr. Hyman is entitled to absolute prosecutorial immunity or qualified immunity.

In addition to Plaintiff's claims against Mr. Hyman being barred by absolute immunity as an advocate for the State and engaging with Plaintiff in purely a prosecutorial role, Plaintiff's conspiracy claim fails to state a claim against Mr. Hyman. Conspiracy is not an independent basis of liability in §1983 actions, *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) and since Plaintiff did not plead a viable constitutional claim against Mr. Hyman, Plaintiff has no §1983 conspiracy claim either. *Id.* To establish a civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).

After *Iqbal* and *Twombly,* conspiracy claims are held to a higher standard than other allegations. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Where a plaintiff alleges a vast conspiracy, as here, plaintiff must meet a high standard of plausibility before being allowed to proceed to discovery *Id*. at 971. Plaintiff's bare and repeated allegations that Defendants "conspired," along with recitations to the legal elements does not meet Plaintiff's burden. *Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998) (¶¶305-307). Here, Plaintiff fails to allege any specific conduct by Mr. Hyman to support a factual basis for the conclusory allegation that Mr. Hyman had either an express or implied agreement with any defendant to deprive Plaintiff of constitutional rights and especially so after Mr. Hyman left the SAO on May 1, 1982. *Id. see*

*also*: *Kitchen v. Burge,* 781 F. Supp. at 731 ("Prosecutors remain immune from having to divulge exculpatory information they obtained while prosecutors, even after they are no longer prosecutors."). Plaintiff's complaint fails to demonstrate that after Mr. Hyman left the SAO in 1982, and became a private citizen, that (1) he and a state official reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents. *Fries,* at 457-58. *See also: Whitlock v. Brueggemann*, 682 F.3d 567, 577 (7th Cir. 2012) ("There must be evidence of a concerted effort between a state actor and [a private] individual."(quotation and citation omitted).

Plaintiff has not demonstrated that Mr. Hyman and "every defendant" reached an agreement to deny and "continues to deprive" Plaintiff "and numerous other African American torture victims" of their constitutional rights. Simply stating that conspirators shared the same objective, is insufficient. Rather a conspiracy requires that there be an agreement, express or implied, to reach a desired result. *Cooney,* 735 F.3d at 519. Plaintiff's attempts to lump together 16 defendants to plaintiff's particular grievance and that of "numerous other African Americans" are too broad to be plausible and does not turn 39 years of events unrelated to Mr. Hyman after 1982 into a conspiracy. *Id.*

### E.   Absolute Prosecutorial Immunity Also Bars Plaintiff's State Law Claims

Since Plaintiff's state law claims are predicated upon the same factual allegations as his §1983 claims, Defendant ASA Hyman is entitled to absolute immunity from Plaintiff's state law claims, too. Illinois courts have mirrored the Supreme Court's pronouncement in *Imbler* that under Illinois law, ASAs are entitled to absolute immunity. *White v. City of Chicago*, 369 Ill. App. 3d 765, 769 (1st Dist. 2006). *Tobey v. Chibucos,* 890 F.3d 634, 649 (7th Cir. 2018)(Illinois courts follow the federal law on absolute immunity). Likewise, district courts applying Illinois law have held state and federal doctrines of prosecutorial immunity coterminous and prosecutors

acting within the scope of their prosecutorial duties are absolutely immune from liability under state law for malicious prosecution and conspiracy. *Hobbs v. Cappelluti*, No. 10 C 7649, 899 F. Supp. 2d 738, 769 (N.D. Ill. 2012); *Wrice v. Burge*, 187 F. Supp. 3d at 948. Plaintiff's claims against ASA Hyman fail because they arise solely out of actions he allegedly engaged in while acting as a prosecutor in the SAO. ASA Hyman is entitled to absolute prosecutorial immunity.

### IX. Mr. Hyman is Entitled to Qualified Immunity on Counts 1 through 4

Public officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a two-pronged analysis: whether the record evidences a constitutional violation; and if so, whether the right violated was clearly established at the time the violation occurred. *Pearson v. Callahan,* 555 U.S. 223, 236-42 (2009). Plaintiff has failed to set forth facts that Mr. Hyman violated any constitutional rights, much less that it was clearly established in 1982 that any inaction by him to physically restrain alleged officers violated Plaintiff's constitutional rights. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017). To be clearly established, the rights' contours must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right..." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Although plaintiff need not point to an identical case, a plaintiff must point to precedent placing the "statutory or constitutional question beyond debate." *Id.*

**A. Witness Coercion -** If the Court concludes that ASA Hyman is not entitled to absolute immunity, it must dismiss plaintiff's claims on grounds of qualified immunity. *Buckley IV,* 20 F.3d at 794. Plaintiff makes much of the police officers' interrogation of witnesses being coercive or fabricated, but the two are not synonymous or interchangeable. *Fields II,* 740 F.3d at 1110. Coerced testimony is testimony that a witness is forced by improper means to give; the

testimony may be true or false. Fabricated testimony is testimony that is made up; it is invariably false. *Id.* Only the latter supports a due process claim, and even then, only if the record shows that the officers "created evidence they knew to be false." *Avery,* 847 F.3d at 439; *Whitlock,* 682 F.3d at 584 (Coercively interrogating witnesses, paying witnesses for testimony, and witness-shopping may be deplorable, and these tactics may contribute to wrongful convictions, but they do not necessarily add up to a constitutional violation…because "[e]vidence collected with these kinds of suspect techniques, unlike falsified evidence and perjured testimony, may turn out to be true). ASA Hyman is entitled to qualified immunity regarding alleged officers' coercive techniques toward witnesses because it did not violate plaintiff's rights, was not known to ASA Hyman and was not known by ASA Hyman to be false. *Buckley IV,* at 794.

**B. Plaintiff's Alleged Failure to Intervene Claims -** It is well established that personal involvement is a prerequisite for individual liability in a §1983 action. *Wolfe-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). In order to evade §1983's personal participation requirement, Plaintiff attempts to hold ASA Hyman accountable for the conduct of defendant police officers on February 14, 1982, and *later,* other assistant state's attorneys who were the trial lawyers from 1983-2020 (*after* Mr. Hyman resigned on May 1, 1982), including his claims for wrongful charging, prosecutions, convictions and imprisonment (Count 1), coercive interrogation (Count 2), deprivation of liberty without probable cause (Count 3), conspiracy to deprive constitutional rights (Count 4), state law malicious prosecution (Count 6), IIED (Count 7) and civil conspiracy (Count 8) by alleging a failure to intervene to prevent the conduct of the others. (R.1, ¶¶318, 326). However, seeking to hold Mr. Hyman liable for violating plaintiff's constitutional rights under a failure to intervene theory is deficient since he had no duty to prevent police from violating rights or to command officers to do anything.

18

While the Seventh Circuit has recognized that a police officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under §1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent harm from occurring, *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994), the Seventh Circuit has not held such an obligation for prosecutors. *Gordon v. Devine*, 2008 U.S. Dist. Lexis 81234, \*56 (the district court did not recognize a failure to intervene claim against a prosecutor and declining to expand the law to recognize a "failure to intervene" claim against ASAs and dismissed the claim pursuant to FRCP 12(b)(6)); *Andrews v. Burge*, 660 F. Supp. 2d at 876 n. 6 (following *Gordon* and dismissing a failure to intervene claim against State's Attorney pursuant to FRCP 12(b)(6). In Illinois, an ASA does not have police powers, nor do they have command of police operations and the duties of a State's Attorney do not include that of a peace officer. (*See* 55 ILCS §5/3-9005.) As explained in *Anderson v. Simon*, 217 F.3d 472, 476 (7th Cir. 2000), "the police are not obligated to adhere to the suggestions of the state's attorney's office, a separate and distinct organization with no command authority over the Chicago Police Department." Thus, an attempt to impose a duty on a prosecutor to "physically intervene" would encroach on the very prosecutorial discretion that entitles ASAs absolute immunity in the initiation and pursuit of criminal charge. *Spiegel,* 121 F.3d 251, 257; *Davis v. Zirkelbach*, 149 F.3d 614, 617 (7th Cir. 1998)(ASA immunity extends to acts taken to initiate charge including relying on illegally recorded tapes).

ASA Hyman is entitled to qualified immunity on plaintiff's failure to intervene claim because there was no clearly established duty for Cook County ASAs to intervene in the

circumstances alleged in the complaint, let alone a clearly established duty to do so in 1982. As the court in *Serrano v. Guevara*, held: "So the issue is not just whether the plaintiffs' rights were clearly established, but also whether any reasonable official standing in the prosecutors' shoes in [1982] would have known that their actions—or inaction, as it were—would violate plaintiffs' rights. *Serrano v. Guevara*, No. 17 cv 2869, 315 F. Supp. 3d 1026, 1038-39 (N.D. Ill. 2018) (dismissing failure to intervene claims against prosecutors based on qualified immunity as not clearly established in 1993 that prosecutors had a duty to intervene.) Furthermore, in ruling no clear duty of ASAs to intervene to stop police, Judge Guzman opined: there are "good reasons to be cautious in expanding the law in this area to include the State's Attorneys." *Patrick v. City of Chicago*, No. 14 cv 3658, 213 F. Supp. 3d 1033, 1054 (N.D.Ill.2016).

> "If Plaintiff claims the duty was to intervene at the police station, the underlying premise — that the prosecutor is like another police officer is incorrect. In Illinois, a prosecutor does not have police powers, nor do prosecutors have command of police operations, though at times courts act as if they do. *Andrews*, 660 F. Supp. 2d 868. Indeed, the prosecutor's lack of authority in such a situation is true in both the legal and practical sense. Prosecutors called to police stations to memorialize a confession lack not only the legal authority to direct or limit law enforcement officers in their investigations, but also any practical means by which they can effectively intervene." *Id. at* 1055.

To show that the right in question was clearly established at the time the alleged violation occurred, a plaintiff must point to closely analogous cases which establish that the conduct was unlawful or demonstrate the violation was so obvious that a reasonable state actor should know that what he is doing, or in this case not doing, violated the constitution. *Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005). The Seventh Circuit has not explicitly recognized a failure to intervene claim against a prosecutor, and district courts disagree. *Cf. Bianchi v. McQueen,* 818 F.3d 309, 323 (7th Cir. 2016) (qualified immunity applied where law is unsettled as to whether claim was cognizable). While cases refusing to dismiss failure to intervene claims against ASA's rely on *Whitlock*, 682 F.3d 567, that decision was issued 30 years after the events here. Thus, it

was not clearly established in 1982 that Mr. Hyman had a duty to intervene or to refuse to take a statement. *Serrano,* 315 F. Supp. 3d at 1039; *Patrick,* 213 F. Supp. 3d at 1055 ("To the extent that imposing a duty to intervene implies a duty to refuse to prosecute or to memorialize a (tainted) confession, imposing such a duty arguably interferes with the [ASA's] absolute discretion to determine the value of a case and decide or decline to prosecute.")

## C.    Alleged Conspiracy with Other ASAs Entitles Mr. Hyman to Qualified Immunity

The intra-corporate conspiracy doctrine establishes that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1867-69 (2017) (considering the applicability of doctrine in a § 1985 case). "The underlying rationale is that employees who work for a *single* entity cannot be said to conspire with one another, because (like tangoing) it takes two (or more) to conspire." *Haliw v. City of S. Elgin*, No. 19 c 1515, 2020 U.S. Dist. Lexis 47329 at *4 (N.D. Ill. Mar.18, 2020) (police entitled to qualified immunity on a §1983 conspiracy claim because the applicability of the doctrine was not clearly established); *contra: Ochoa v. Lopez,* No. 20 cv 2977, 2021 U.S. Dist. Lexis 185420 *20 (N.D. Ill. Sept. 28, 2021).  Plaintiff's conspiracy claims against all former Cook County ASAs are barred as to Hyman, Kunkle, Trutenko and Horvat and to State's Attorney Daley on absolute immunity grounds and on Qualified Immunity to all County Defendants including Hartnett on the intra-corporate conspiracy doctrine. *Id.*

## X.  Counts 1 through 4 Must be Dismissed for Failure to Plead a §1983 Claim

Liability under § 1983 requires proof of two essential elements: the conduct complained of (1) "was committed by a person acting under color of state law" and (2) "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Yang,* 37 F.3d 282, 284. Here, there are no facts that establish that Mr. Hyman participated in any

conduct that caused Plaintiff to be wrongfully charged, prosecuted or convicted on or after May 1, 1982. Mr. Hyman simply asked questions with a court reporter present and the transcript does not indicate any inappropriate conduct.

**A.    After May 1, 1982, Mr. Hyman Did Not Act Under Color of Law**

Mr. Hyman took Plaintiff Jackie Wilson's statement regarding the officers' homicides on February 14, 1982. Mr. Hyman left the SAO less than three months later on May 1, 1982. Plaintiff has not alleged that Mr. Hyman acted under color of law in any relevant role as a prosecutor after February 14, 1982. In order to hold Mr. Hyman liable for his post-resignation conduct under §1983, Plaintiff must show that he acted under "color of law," by "jointly engag[ing] with state officials in the prohibited action." *Adickes v. Kress,* 398 U.S. 144, 152 (1970).  As the Seventh Circuit stated in *Whitlock,* "[t]his is a high standard.  [T]here must be evidence of a *concerted effort* between a state actor and a [private] individual." *Whitlock,* 682 F.3d at 577 quoting *Fries,* 146 F.3d at 457 (emphasis in original). Here, Plaintiff has not identified which state official Mr. Hyman reached an understanding with after he left the SAO in 1982, and what that understanding may have been, and that afterward, Defendant Hyman and this state official were willful participants in a conspiracy to maliciously deny Plaintiff his constitutional rights.  *Fries,* 146 F.3d at 458.

**B.    Plaintiff's Constitutional Claims Have No Merit**

As discussed above, Plaintiff's claims for wrongful charging, prosecution, convictions, imprisonment, coercive interrogation, and deprivation of liberty without probable cause against ASA Hyman are barred by the statute of limitations. As also discussed, these claims are subject to dismissal because Plaintiff cannot hold Mr. Hyman individually liable for the conduct of others in which he was not personally involved. *Palmer v. Marion City,* 327 F.3d 588, 594 (7th

Cir. 2003). An individual cannot be held liable in a §1983 action unless he or she caused or participated in an alleged constitutional deprivation. *Id.* Plaintiff does not allege that ASA Hyman abused him in any way, nor does Plaintiff allege that ASA Hyman was present in the room when plaintiff was allegedly abused by the police. Rather, police officers informed ASA Hyman that plaintiff agreed to give a statement and ASA Hyman, an advocate for the State, and court reporter Hartnett transcribed plaintiff's statement. (¶148). This does not equate to participation in abuse. *Hunt,* 926 F. 2d 689. At minimum, Plaintiff has not alleged any conduct or connection with Mr. Hyman that occurred after June 2018, when Plaintiff was released on bond and conviction overturned. As the Seventh Circuit held in *Buckley IV*, if fabricated evidence is put in a drawer, making no further use of it, there is no due process violation; the action (here the alleged coerced statement) did not cause an infringement of anyone's liberty interest. *Buckley IV,* 20 F.3d at 795. Thus, this Court must strike from consideration any tortious conduct alleged against Hyman occurring after February 14, 1982, and certainly after June 20, 2018, when the Circuit Court suppressed Plaintiff's statement. *See e.g., Smith v. City of* Chicago, 3 F. 4th 332, 339 (7th Cir. 2021).

### XI. Counts 6 through 8 Must Be Dismissed for Failure to State a Claim

#### A.  Plaintiff Fails to State a Cause of Action for Malicious Prosecution.

The Illinois Supreme Court has long recognized that suits for malicious prosecution are not favored. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶¶24 (2019).  To prevail, Plaintiff must demonstrate: (1) the commencement or continuance of a criminal proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages. *Szczesniak v. CJC Auto Parts, Inc.,* 21 N.E. 3d 486, 490 (Ill. App. Ct. 2014). The absence of any one of these elements precludes the claim. *Id.* While it is

uncontested that ASA Hyman made the decision to approve the charge of murder and armed robbery, plaintiff has not pled any facts to suggest that Mr. Hyman lacked probable cause to believe Plaintiff was *not* involved with the murders on February 9, 1982. Additionally, after Mr. Hyman resigned on May 1, 1982, he was a private individual and there are no allegations that he played a significant role in the prosecution or encouraged the continuation of the prosecution despite knowing that no probable cause existed. *Denton v. Allstate Ins. Co.,* 504 N.E.2d 756, 760 (Ill. App. Ct. 1986). Liability for malicious prosecution cannot be predicated on a failure to act. *Id.* There are no allegations that Mr. Hyman acted with malice or had an improper motive other than to bring a party to justice. *Szczesniak,* at 493-94. Finally, after the Circuit Court suppressed Plaintiff's confession on June 20, 2018, Mr. Hyman had absolutely no involvement whatsoever in Plaintiff's third prosecution in 2020 by a completely different entity. (¶¶26-27, 213-222). Thus, Plaintiff's claim expired in June 2019 at the latest based upon the Illinois Tort Immunity Act (see 745 ILCS 10/8-101(a)); *Williams v. Lampe,* 399 F.3d 867, 870 (7th Cir. 2005).

### B. Plaintiff Fails to State a Claim for IIED and the Claim is Time Barred

The conduct that is the basis of Plaintiff's IIED claim against Mr. Hyman was the recording of Plaintiff's confession in 1982, which accrues on the date of the arrest and is not a continuing violation. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). In Illinois, IIED claims are subject to a one-year statute of limitations. *Davenport v. Dovgin*, 545 F. App'x 535, 538 (7th Cir. 2013) (one-year limitations period for claims against Illinois local government and its employees, 745 ILCS 10/8-101). Even assuming *arguendo* that the limitations period was tolled until Plaintiff's conviction was reversed in 2018, it was not tolled thereafter, as the complained of conduct attributed to Mr. Hyman – coerced statement – was suppressed and unrelated to Plaintiff's third prosecution in 2020. Therefore, Plaintiff's IIED claim started in

June 2018 (when the Court suppressed Plaintiff's statement) and *Heck,* would not require a court to bar Plaintiff's claim if he brought it immediately upon his release. *Smith,* 3 F. 4th at 339.

## C.     Plaintiff Fails to State a Cause of Action for Conspiracy Under State Law

In Count 8, Plaintiff alleges a state law claim of conspiracy against Mr. Hyman. However, civil conspiracy "is not a separate and distinct tort in Illinois." *Hurst v. Capital Cities Media, Inc.*, 323 Ill. App. 3d 812, 822-23 (5th Dist. 2001). There can be no civil conspiracy claim without an actionable state law claim. *Id*. Therefore, because plaintiff fails to plead an actionable state law claim against Mr. Hyman for IIED or malicious prosecution, there is also no actionable conspiracy claim under Illinois law. Additionally, for the same reasons Plaintiff's federal conspiracy claim fails to establish that Mr. Hyman had either an express or implied agreement with any other Defendant, Plaintiff's state law claim of conspiracy also fails.

## XII.     Conclusion

WHEREFORE, Defendant, Lawrence Hyman respectfully moves this Honorable Court to dismiss Plaintiff's Complaint with prejudice and declare the Illinois Torture Inquiry and Relief Commission Act ("TIRC"), 775 ILCS 40/1 *et seq.* is and was unconstitutional since its enactment, in August, 2009, as if never enacted, or for other relief which is just.

Respectfully submitted,
LAWRENCE HYMAN

By:     /S/Edward R. Theobald
Edward R. Theobald, attorney for Lawrence Hyman

Edward R. Theobald
Law Offices of Edward R. Theobald
Arboretum Lakes – 901 Warrenville Road
Suite 175
Lisle, IL 60532
(312) 346-9246
Bears51@aol.com

25

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2021, I electronically filed the foregoing with the

Clerk of the Court for the United States Court for the Northern District of Illinois by using

the CM/ECF system. I certify that service will be accomplished by the CM/ECF system.


/S/ Edward R. Theobald
Edward R. Theobald
Law Offices of Edward R. Theobald
Arboretum Lakes – 901 Warrenville Road, Suite 175
Lisle, IL 60532
(312) 346-9246
Bears51@aol.com